**UNITED STATES v. PRAYLOU et al.**
**UNITED STATES v. WALKER.**

**Nos. 6631, 6644.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 19, 1953.

Decided Nov. 9, 1953.

Morton Hollander, Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Ben Scott Whaley, U. S. Atty., Charleston, S. C., Russell D. Miller, Asst. U. S. Atty., and Paul A. Sweeney, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

John D. Lee and M. M. Weinberg, Jr., Sumter, S. C. (Lee & Moise, Henry B. Richardson and M. M. Weinberg, Sumter, S. C., on the brief), for appellees.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and WILKIN, District Judge.

PARKER, Chief Judge.

These are appeals by the United States from judgments rendered under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674, for damages caused by the falling near a government airfield within the State of South Carolina of airplanes operated by employees of the government on government business. In No. 6631 a government plane fell and exploded on the premises of one Sandy Praylou destroying his barn and live stock and seriously injuring three of his children. In No. 6644 the plane fell and exploded near a house on which the plaintiff Edward Walker was working and caused him to sustain injuries. The trial judge held that the government was liable in both cases under the South Carolina statute which enacts the Uniform Aeronautics Act as the law of South Carolina. 36 Statutes of South Carolina 220–222. Section 5 of that Act, being section 7104 of the Code of 1942, section 2–6 of the Code of 1952, provides:

"The owner of every aircraft which is operated over the land or waters of this State is absolutely liable for injuries to persons or property on the land or water beneath caused by ascent, descent or flight of the aircraft or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured or of the owner or bailee of the property injured. * * *"

The contention of the government is that because this section imposes absolute liability on the owner of aircraft for injuries caused by its flight, irrespective of negligence, the government may not be held liable thereunder by reason of the

provision of the Tort Claims Act, which submits the government to the liability of an individual only where there is a negligent or wrongful act or omission of an employee of the government. The applicable provisions of the Tort Claims Act are 28 U.S.C. §§ 1346(b) and 2674 which are as follows:

"§ 1346(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

"§ 2674. The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

■■■ The weakness of the position of the government is that it overlooks the fact that the effect of the South Carolina statute is to make the infliction of injury or damages by the operation of an airplane of itself a wrongful act giving rise to liability. Whether the United States could be held liable under the statute as owner of a plane which it was not operating, we need not stop to inquire, since it is admitted that the planes here were being operated by employees of the government within the scope of their authority. So far as applied to these cases, the statute does no more than adopt the common law rule of liability. As we said in D'Anna v. United States, 4 Cir., 181 F.2d 335, 337:

"One who flies an aeroplane is opposing mechanical forces to the force of gravity and is engaged in an undertaking which is fraught with the gravest danger to persons and property beneath if it is not carefully operated or if the mechanism of the plane and its attachments are not in first class condition. At common law, the hazardous nature of the enterprise subjected the operator of the plane to a rule of absolute liability to one upon the ground who was injured or whose property was damaged as a result of the operation. A.L.I. Restatement Torts secs. 519, 520, d; Prosser on Torts p. 452."

See also 6 Am.Jur. 39–40, notes 99 A. L.R. 176, 83 A.L.R. 336, 69 A.L.R. 320.

■■■ It should be noted that the liability asserted here against the government is not one arising out of the mere possession of property, but one created by law for the invasion of personal and property rights. It is clearly within the power of the state to enact legislation imposing such liability, and it is equally clear that any such invasion of rights, whether intentional or not, can be made a wrongful act on the part of the one guilty of the invasion, and is made such by a statute imposing liability therefor. As said in the A.L.I. Restatement of Torts, p. 16, the word "tortious", which means wrongful, "is appropriate to describe not only an act which is intended to cause an invasion of an interest legally protected against intentional invasion, or conduct which is negligent as creating an unreasonable risk of invasion of such an interest, but also conduct which is carried on at the risk that the actor shall be subject to liability for harm caused thereby, although no such harm is intended and the harm cannot be prevented by any precautions or care which it is practicable to require".

■ The old rule of the common law, cujus est solum ejus est usque ad coelum, has given way to the rule that there is a right to navigate the air at a sufficient distance above the surface of the earth not to interfere with persons or property beneath. United States v. Causby, 328 U.S. 256, 260, 66 S.Ct. 1062, 90 L.Ed. 1206; Thrasher v. City of Atlanta, 178 Ga. 514, 173 S.E. 817, 99 A.L.R. 158; Smith v. New England Aircraft Co., 270 Mass. 511, 170 N.E. 385, 69 A.L.R. 300; United States Air Commerce Act, 44 Stat. 568, 49 U.S.C.A. § 171 et seq. And this is recognized in the Uniform Aeronautics Act adopted as law in the State of South Carolina, which expressly authorizes flight in aircraft over the lands and waters of the state unless at such a low altitude as to interfere with the use to which it is being put or unless so conducted as to be imminently dangerous to persons or property on the land or water beneath. The act which confers this right of navigation, however, also imposes absolute liability for damage resulting from a forced landing or from injuries caused by the ascent, descent or flight of the aircraft, or the dropping or falling of any object therefrom, unless the injury is caused or contributed to by the negligence of the person injured or of the owner of the property. And where there is such injury, with liability incurred as a result thereof, the liability is properly viewed as arising, not out of contract or out of the ownership of property, but out of the tortious or wrongful act of the person operating the plane in permitting it to cause the injury or in not preventing the occurrence which caused it. In other words, the flight of an airplane at a proper altitude is recognized as lawful but the person operating it is charged with the responsibility of preventing injury to persons and property beneath. Not to prevent such injury, whether negligent or not, renders the person operating the plane liable at law on the theory that it was his duty under the law to prevent it if he undertook to operate the plane. As said by Judge Moore in Parcell v. United States, D.C., 104 F.Supp. 110, 116, "To say that a tort giving rise to absolute liability is not a 'wrongful act' would be a technical refinement of language incompatible with that liberal interpretation of the sovereign's waiver of immunity which the highest court in the land has admonished us to employ. See United States v. Aetna Casualty & Surety Co., 1949, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171; United States v. Yellow Cab Co., 1950, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523."

■ There can be no question, we think, but that the federal tort claims act was intended to cover cases involving liability of this sort. As we said in State of Maryland to the use of Burkhardt v. United States, 4 Cir., 165 F.2d 869, 871, 1 A.L.R.2d 213: "Congress was creating a liability not theretofore existing on the part of the government. To have defined all of the tort rules under which liability could be established would have been an almost impossible undertaking; but standards of liability were necessary and Congress was compelled, as a practical matter, to adopt the principles and standards of local law in defining them." As pointed out in that case, one of the principal purposes of the legislation was to eliminate the necessity for the passage of private acts, which had consumed so much of the time of Congress;[1] and it is not consonant with such purpose that Congress should have intended to exclude from the coverage of the act liability arising from operations of the sort here involved merely because under state law the liability for injury was made absolute and not dependent upon negli-

1. See also our decision in Somerset Seafood Co. v. United States, 4 Cir., 193 F.2d 631, 634, where the Court, speaking through Judge Dobie, said: "The Act must be given a liberal construction to ward off the obvious evil which the Act was passed to prevent—the cumbersome and unwieldy practice of seeking relief in Congress by private bills."

gence. Equally absurd would be the conclusion that Congress intended that there should be liability in the states where liability under state law is based on negligence, and no liability in the great majority of the states which have adopted the Uniform Aeronautics Act. It is no answer to this to say that the government would be liable for negligence but not subject to the absolute liability in states having the uniform act; for in those states the absolute liability is the only one that the law prescribes. Furthermore, to hold that in those states the government would be liable only on a showing of negligence whereas private individuals are held to the absolute liability of the statute would be contrary to the requirement of 28 U.S.C. § 2674 that the United States shall be liable "in the same manner and *to the same extent* as a private individual under like circumstances". (Italics supplied.)

The government relies upon Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, the case involving the Texas City disaster, where one of the questions involved was whether the government was liable on the theory that it was maintaining a nuisance in having in possession the ammonium nitrate which exploded. While language was used in the opinion in that case which lends some support to the government's argument here, we do not think that the doctrine there laid down was intended to apply to a case of this sort, where the result of its application would be patently absurd. To say that the Tort Claims Act was not intended to cover a liability arising from the possession of dangerous property by the government is a very different thing from saying that it was not intended to apply to a liability for damage inflicted by government employees merely because the law of a state imposes absolute liability for such damage and not mere liability for negligence.

The government relies also upon language found in the opinion in United States v. Hull, 1 Cir., 195 F.2d 64, 67, to the effect that the Tort Claims Act does not cover liability for injuries resulting without fault from ultra-hazardous occupations because the government has consented to be sued only where injury has been caused by the negligent or wrongful act or omission of any employee. As we have seen, however, the effect of the Uniform Aeronautics Act adopted by law in South Carolina is to make the infliction of injury or damage by the operation of an aeroplane a wrongful act in itself. The Hull case was one in which the hand of the plaintiff was injured by the falling of a window in a post office and the court found liability by applying the res ipsa loquitur rule. To apply the res ipsa loquitur rule as applied in that case is certainly not essentially different from applying the common law rule of absolute liability for damage inflicted by a falling plane adopted by the Uniform Aeronautics Act. This is certainly true where the plane, as here, is being operated by an employee of the government.

It is generally impossible to establish with any certainty the cause of the falling of an airplane. To apply the res ipsa loquitur rule, as we did in the D'Anna case, supra, is, as stated, not very different from applying the rule of absolute liability; and for the law of a state to prescribe the latter instead of the former does not seem to us to remove the case from the liability which the government undertook to assume under the Tort Claims Act. On the contrary, it seems to us that it would be absolutely absurd to hold that the government is liable under the Tort Claims Act for the act of an employee who crashes into a house with a truck but not liable if he crashes into it with an airplane, and this on the theory that there is absolute liability under state law in the latter case but not in the former. The man on the street would never understand any such distinction; and in the minds of thoughtful lawyers it would do little credit to the law.

There was no error and the judgment appealed from will be affirmed.

Affirmed.