LAIRD, SECRETARY OF DEFENSE, ET AL. *v.*
NELMS ET AL.

No. 71–573.  Argued April 17, 1972—Decided June 7, 1972

REHNQUIST, J., delivered the opinion of the Court, in which
BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, and POWELL, JJ.,
joined.  STEWART, J., filed a dissenting opinion, in which BRENNAN,
J., joined, *post*, p. 803.  DOUGLAS, J., took no part in the considera-
tion or decision of the case.

*Richard B. Stone* argued the cause for petitioners.   On
the brief were *Solicitor General Griswold, Assistant At-
torney General Gray, Wm. Terry Bray, Alan S. Rosen-
thal,* and *Robert E. Kopp.*

*George E. Allen, Sr.,* argued the cause and filed a brief
for respondents.

MR. JUSTICE REHNQUIST delivered the opinion of the
Court.

Respondents brought this action in the United States
District Court under the Federal Tort Claims Act, 28
U. S. C. §§ 1346 (b), 2671–2680.  They sought recovery for
property damage allegedly resulting from a sonic boom
caused by California-based United States military planes
flying over North Carolina on a training mission.  The
District Court entered summary judgment for petitioners,
but on respondents' appeal the United States Court of

Appeals for the Fourth Circuit reversed. That court held that, although respondents had been unable to show negligence "either in the planning or operation of the flight," they were nonetheless entitled to proceed on a theory of strict or absolute liability for ultrahazardous activities conducted by petitioners in their official capacities. That court relied on its earlier opinion in *United States* v. *Praylou,* 208 F. 2d 291 (1953), which in turn had distinguished this Court's holding in *Dalehite* v. *United States,* 346 U. S. 15, 45 (1953). We granted certiorari. 404 U. S. 1037.

*Dalehite* held that the Government was not liable for the extensive damage resulting from the explosion of two cargo vessels in the harbor of Texas City, Texas, in 1947. The Court's opinion rejected various specifications of negligence on the part of Government employees that had been found by the District Court in that case, and then went on to treat petitioners' claim that the Government was absolutely or strictly liable because of its having engaged in a dangerous activity. The Court said with respect to this aspect of the plaintiffs' claim:

> "[T]he Act does not extend to such situations, though of course well known in tort law generally. It is to be invoked only on a 'negligent or wrongful act or omission' of an employee. Absolute liability, of course, arises irrespective of how the tortfeasor conducts himself; it is imposed automatically when any damages are sustained as a result of the decision to engage in the dangerous activity." 346 U. S., at 44.

This Court's resolution of the strict-liability issue in *Dalehite* did not turn on the question of whether the law of Texas or of some other State did or did not recognize strict liability for the conduct of ultrahazardous activities. It turned instead on the question of whether the language of the Federal Tort Claims Act permitted

under any circumstances the imposition of liability upon the Government where there had been neither negligence nor wrongful act. The necessary consequence of the Court's holding in *Dalehite* is that the statutory language "negligent or wrongful act or omission of any employee of the Government," is a uniform federal limitation on the types of acts committed by its employees for which the United States has consented to be sued. Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of "misfeasance or nonfeasance," 346 U. S., at 45, on the part of the Government.

It is at least theoretically possible to argue that since *Dalehite* in discussing the legislative history of the Act said that "wrongful" acts could include some kind of trespass, and since courts imposed liability in some of the early blasting cases on the theory that the plaintiff's action sounded in trespass, liability could be imposed on the Government in this case on a theory of trespass which would be within the Act's waiver of immunity. We believe, however, that there is more than one reason for rejecting such an alternate basis of governmental liability here.

The notion that a military plane on a high-altitude training flight itself intrudes upon any property interest of an owner of the land over which it flies was rejected in *United States* v. *Causby,* 328 U. S. 256 (1946). There this Court, construing the Air Commerce Act of 1926, 44 Stat. 568, as amended by the Civil Aeronautics Act of 1938, 52 Stat. 973, 49 U. S. C. § 401, said:

> "It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—*Cujus est solum ejus est usque ad coelum.* But that doctrine has no place in the modern world. The air is a public highway, as Congress has declared.

> Were that not true, every transcontinental flight would subject the operator to countless trespass suits. Common sense revolts at the idea. To recognize such private claims to the airspace would clog these highways, seriously interfere with their control and development in the public interest, and transfer into private ownership that to which only the public has a just claim." 328 U. S., at 260–261.

Thus, quite apart from what would very likely be insuperable problems of proof in connecting the passage of the plane over the owner's air space with any ensuing damage from a sonic boom, this version of the trespass theory is ruled out by established federal law. Perhaps the precise holding of *United States* v. *Causby, supra,* could be skirted by analogizing the pressure wave of air characterizing a sonic boom to the concussion that on occasion accompanies blasting, and treating the air wave striking the actual land of the property owner as a direct intrusion caused by the pilot of the plane in the mold of the classical common-law theory of trespass.

It is quite clear, however, that the presently prevailing view as to the theory of liability for blasting damage is frankly conceded to be strict liability for undertaking an ultrahazardous activity, rather than any attenuated notion of common-law trespass. See Restatement of Torts §§ 519, 520 (e); W. Prosser, Law of Torts § 75 (4th ed. 1971). While a leading North Carolina case on the subject of strict liability discusses the distinction between actions on the case and actions sounding in trespass that the earlier decisions made, it, too, actually grounds liability on the basis that he who engages in ultrahazardous activity must pay his way regardless of what precautions he may have taken. *Guilford Realty & Ins. Co.* v. *Blythe Bros. Co.,* 260 N. C. 69, 131 S. E. 2d 900 (1963).

More importantly, however, Congress in considering the Federal Tort Claims Act cannot realistically be said

to have dealt in terms of either the jurisprudential distinctions peculiar to the forms of action at common law or the metaphysical subtleties that crop up in even contemporary discussions of tort theory. See Prosser, *supra*, at 492–496. The legislative history discussed in *Dalehite* indicates that Congress intended to permit liability essentially based on the intentionally wrongful or careless conduct of Government employees, for which the Government was to be made liable according to state law under the doctrine of *respondeat superior*, but to exclude liability based solely on the ultrahazardous nature of an activity undertaken by the Government.

A House Judiciary Committee memorandum explaining the "discretionary function" exemption from the bill when that exemption first appeared in the draft legislation in 1942 made the comment that "the cases covered by that subsection would probably have been exempted . . . by judicial construction" in any event, but that the exemption was intended to preclude any possibility

> "that the act would be construed to authorize suit for damages against the Government growing out of a legally authorized activity, such as a flood-control or irrigation project, where no wrongful act or omission on the part of any Government agent is shown, and the only ground for suit is the contention that the same conduct by a private individual would be tortious . . . ." Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., ser. 13, pp. 65–66 (1942).

The same memorandum, after noting the erosion of the doctrine of sovereign immunity over the years, observed with respect to the bill generally:

> "Yet a large and highly important area remains in which no satisfactory remedy has been provided

for the wrongs of Government officers or employees, the ordinary 'commonlaw' type of tort, such as personal injury or property damage caused by the negligent operation of an automobile." *Id.*, at 39.

The type of trespass subsumed under the Act's language making the Government liable for "wrongful" acts of its employees is exemplified by the conduct of the Government agents in *Hatahley* v. *United States,* 351 U. S. 173, 181. Liability of this type under the Act is not to be broadened beyond the intent of Congress by dressing up the substance of strict liability for ultra-hazardous activities in the garments of common-law trespass. To permit respondent to proceed on a trespass theory here would be to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe the Act permits such a result.

Shortly after the decision of this Court in *Dalehite,* the facts of the Texas City catastrophe were presented to Congress in an effort to obtain legislative relief from that body. Congress, after conducting hearings and receiving reports, ultimately enacted a bill granting compensation to the victims in question. 69 Stat. 707; H. R. Rep. No. 2024, 83d Cong., 2d Sess. (1954); S. Rep. No. 2363, 83d Cong., 2d Sess. (1954); H. R. Rep. No. 1305, 84th Cong., 1st Sess. (1955); H. R. Rep. No. 1623, 84th Cong., 1st Sess. (1955); S. Rep. No. 684, 84th Cong., 1st Sess. (1955). At no time during these hearings was there any effort made to modify this Court's construction of the Tort Claims Act in *Dalehite.* Both by reason of *stare decisis* and by reason of Congress' failure to make any statutory change upon again reviewing the subject, we regard the principle enunciated in *Dalehite* as controlling here.

Since *Dalehite* held that the Federal Tort Claims Act did not authorize suit against the Government on claims

based on strict liability for ultrahazardous activity, the Court of Appeals in the instant case erred in reaching a contrary conclusion. While as a matter of practice within the Circuit it may have been proper to rely upon *United States* v. *Praylou*, 208 F. 2d 291, it is clear that the holding of the latter case permitting imposition of strict liability on the Government where state law permits it is likewise inconsistent with *Dalehite*. *Dalehite* did not depend on the factual question of whether the Government was handling dangerous property, as opposed to operating a dangerous instrument but, rather, on the Court's determination that the Act did not authorize the imposition of strict liability of any sort upon the Government. Indeed, even the dissenting opinion in *Dalehite* did not disagree with the conclusion of the majority on that point.

Our reaffirmation of the construction put on the Federal Tort Claims Act in *Dalehite* makes it unnecessary to treat the scope of the discretionary-function exemption contained in the Act, or the other matters dealt with by the Court of Appeals.

*Reversed.*

MR. JUSTICE DOUGLAS, having heard the argument, withdrew from participation in the consideration or decision of this case.

MR. JUSTICE STEWART, with whom MR. JUSTICE BRENNAN joins, dissenting.

Under the Federal Tort Claims Act, the United States is liable for injuries to persons or property

"caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346 (b).

The Court of Appeals in this case found that the law of North Carolina renders a person who creates a sonic boom absolutely liable for any injuries caused thereby, and that finding is not challenged here.[1] And while the petitioners argue that the conduct involved falls within one of the numerous express exceptions to the coverage of the Act contained in § 2680,[2] the Court today does not reach that issue. Rather, the Court holds that the words "negligent or wrongful act or omission" preclude the application to the United States of any state law under which persons may be held absolutely liable for injuries caused by certain kinds of conduct. In my view, this conclusion is not justified by the language or the history of the Act, and is plainly contrary to the statutory purpose. I therefore dissent.

In the vast majority of cases in the law of torts, liability is predicated on a breach of some legal duty owed by the defendant to the plaintiff, whether that duty involves exercising reasonable care in one's activities or refraining from certain activities altogether. The law of most jurisdictions, however, imposes liability for harm caused by certain narrowly limited kinds of activities even though those activities are not prohibited and even though the actor may have exercised the utmost care. Such conduct is "tortious," not because the actor is necessarily blameworthy, but because society has made

---

[1] The question whether damage caused by sonic booms is recoverable on a theory of absolute liability has received considerable attention from commentators, most of whom have concluded that there should be such recovery, at least under certain conditions. See, e. g., Note, 32 J. Air Law & Commerce 596, 602–605 (1966); Note, 39 Tulane L. Rev. 145 (1964); Comment, 31 So. Cal. L. Rev. 259, 266–274 (1958); W. Prosser, Law of Torts 516 (4th ed. 1971).

[2] See n. 5, infra.

a judgment that while the conduct is so socially valuable that it should not be prohibited, it nevertheless carries such a high risk of harm to others, even in the absence of negligence, that one who engages in it should make good any harm caused to others thereby. See generally 2 F. Harper & F. James, Law of Torts 785–795, 815–816 (1956); W. Prosser, Law of Torts 442–496 (4th ed. 1971).

While the doctrine of absolute liability is not encountered in many situations even under modern tort law, it was nevertheless well established at the time the Tort Claims Act was enacted, and there is nothing in the language or the history of the Act to support the notion that this doctrine alone, among all the rules governing tort liability in the various States, was considered inapplicable in cases arising under the Act. The legislative history quoted by the Court relates solely to the "discretionary function" exception contained in § 2680, an exception upon which the Court specifically declines to rely.[3] As I read the Act and the legislative

---

[3] The Court's opinion refers to language in *Dalehite* v. *United States,* 346 U. S. 15, which in turn relied on a fragment of legislative history, for the proposition that the words "wrongful act" as used in § 1346 (b) refer only to trespasses. The legislative history cited by the Court in *Dalehite,* consisting of a statement by a Special Assistant to the Attorney General at a committee hearing, merely suggested trespass as one example of the kinds of conduct that would not be embraced by the word "negligence" but which the Act was intended to reach. As the Court today observes, many of the state cases applying what is essentially the doctrine of absolute liability for ultrahazardous activities speak in terms of "trespass." See, *e. g., Guilford Realty & Ins. Co.* v. *Blythe Bros. Co.,* 260 N. C. 69, 131 S. E. 2d 900 (1963); *Enos Coal Mining Co.* v. *Schuchart,* 243 Ind. 692, 188 N. E. 2d 406 (1963); *Whitney* v. *Ralph Myers Contracting Corp.,* 146 W. Va. 130, 118 S. E. 2d 622 (1961). The similarity between the theories of trespass and absolute liability in the blasting cases leads the Court to conclude that the Act does not permit recovery on a "trespass" theory in this case because the Act does not permit recovery on an absolute-liability theory. But if Congress

history, the phrase "negligent or wrongful act or omission" was intended to include the entire range of conduct classified as tortious under state law.[4] The only intended exceptions to this sweeping waiver of governmental immunity were those expressly set forth and now collected in § 2680.[5] This interpretation was put upon

intended, as the Court assumes, that "trespasses" be covered by the Act, I should think the similarity between the two theories would more logically lead to a conclusion that absolute-liability situations are likewise covered.

[4] A bill passed by the Senate in 1942 covered only actions based on the "negligence" of Government employees. S. 2221, 77th Cong., 2d Sess. The House committee substituted the phrase "negligent or wrongful act or omission," saying that the "committee prefers its language as it would afford relief for certain acts or omissions which may be wrongful but not necessarily negligent." H. R. Rep. No. 2245, 77th Cong., 2d Sess., 11. The language used by the House committee was carried over into the bill finally enacted in 1946, without further mention in the committee reports of the intended scope of the words "wrongful act."

[5] "The provisions of this chapter and section 1346 (b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

"(b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.

"(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

"(d) Any claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States.

"(e) Any claim arising out of an act or omission of any employee

the Act by the legislative committees that recommended its passage in 1946: "The present bill would establish a uniform system . . . permitting suit to be brought on *any tort claim* . . . with the exception of certain classes of torts *expressly exempted* from the operation of the act." (Emphasis supplied.) H. R. Rep. No. 1287, 79th Cong., 1st Sess., 3; S. Rep. No. 1400, 79th Cong., 2d Sess., 31. See Peck, Absolute Liability and the Federal Tort Claims Act, 9 Stan. L. Rev. 433, 441–450 (1957).

The Court rests its conclusion on language from *Dalehite* v. *United States*, 346 U. S. 15, where a four-man majority of the Court, in an opinion dealing primarily with the "discretionary function" exception, held the doctrine of absolute liability inapplicable in that extremely unusual case arising under the Federal Tort Claims Act. That language has been severely criticized;[6]

---

of the Government in administering the provisions of sections 1–31 of Title 50, Appendix.

"(f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

"(g) Repealed.

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

"(i) Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system.

"(j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.

"(k) Any claim arising in a foreign country.

"(l) Any claim arising from the activities of the Tennessee Valley Authority.

"(m) Any claim arising from the activities of the Panama Canal Company.

"(n) Any claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives."

[6] See, *e. g.*, Peck, Absolute Liability and the Federal Tort Claims Act, 9 Stan. L. Rev. 433 (1957); Jacoby, Absolute Liability under

it has not since been relied upon in any decision of this Court; and it was rejected as a general principle by at least one Court of Appeals less than a year after *Dalehite* was decided. *United States* v. *Praylou,* 208 F. 2d 291, 295. Moreover, *Dalehite* represented an approach to interpretation of the Act that was abruptly changed only two years later in *Indian Towing Co.* v. *United States,* 350 U. S. 61. That decision rejected the proposition that the United States was immune from liability where the activity involved was "governmental" rather than "proprietary"—a proposition that seemingly had been established in *Dalehite.*[7] And while the *Dalehite* opinion explicitly created a presumption in favor of sovereign immunity, to be overcome only where relinquishment by Congress was "clear," 346 U. S., at 30–31, the Court in *Indian Towing* recognized that the Tort Claims Act "cuts the ground from under" the doctrine of sovereign immunity, and cautioned that a court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." 350 U. S., at 65, 69. See also *Rayonier, Inc.* v. *United States,* 352 U. S. 315, 319–320. These developments, together with an approving citation of the *Praylou* case in *Rayonier, supra,* at 319 n. 2, have until today been generally understood to mean that the language in *Dalehite* rejecting the absolute-liability doctrine had been implicitly abandoned.[8]

---

the Federal Tort Claims Act, 24 Fed. Bar J. 139 (1964); 2 F. Harper & F. James, Law of Torts 860 (1956).

[7] Four members of the Court dissented, saying that the failure of Congress to amend the Act after *Dalehite* should have been taken as indicating approval by Congress of the interpretation given to the Act in that case. 350 U. S., at 74.

[8] See Peck, *supra,* n. 6, at 435; Jacoby, *supra,* n. 6, at 140; Comment, 31 So. Cal. L. Rev. 259, 266 n. 56; Dostal, Aviation Law under the Federal Tort Claims Act, 24 Fed. Bar J. 165, 177 (1964).

The rule announced by the Court today seems to me contrary to the whole policy of the Tort Claims Act. For the doctrine of absolute liability is applicable not only to sonic booms, but to other activities that the Government carries on in common with many private citizens. Absolute liability for injury caused by the concussion or debris from dynamite blasting, for example, is recognized by an overwhelming majority of state courts.[9] A private person who detonates an explosion in the process of building a road is liable for injuries to others caused thereby under the law of most States even though he took all practicable precautions to prevent such injuries, on the sound principle that he who creates such a hazard should make good the harm that results. Yet if employees of the United States engage in exactly the same conduct with an identical result, the United States will not, under the principle announced by the Court today, be liable to the injured party. Nothing in the language or the legislative history of the Act compels such a result, and we should not lightly conclude that Congress intended to create a situation so much at odds with common sense and the basic rationale of the Act. We recognized that rationale in *Rayonier, supra,* a case involving negligence by employees of the United States in controlling a forest fire:

"Congress was aware that when losses caused by such negligence are charged against the public treasury they are in effect spread among all those who contribute financially to the support of the Government and the resulting burden on each tax-

---

[9] See, *e. g., Whitman Hotel Corp.* v. *Elliott & Watrous Eng. Co.,* 137 Conn. 562, 79 A. 2d 591 (1951); *Louden* v. *City of Cincinnati,* 90 Ohio St. 144, 106 N. E. 970 (1914); *Thigpen* v. *Skousen & Hise,* 64 N. M. 290, 327 P. 2d 802 (1958); *Wallace* v. *A. H. Guion & Co.,* 237 S. C. 349, 117 S. E. 2d 359 (1960); and cases cited in n. 3, *supra.* See generally W. Prosser, Law of Torts 514 (4th ed. 1971).

payer is relatively slight. But when the entire burden falls on the injured party it may leave him destitute or grievously harmed. Congress could, and apparently did, decide that this would be unfair when the public as a whole benefits from the services performed by Government employees." 352 U. S., at 320.

For the reasons stated, I would hold that the doctrine of absolute liability is applicable to conduct of employees of the United States under the same circumstances as those in which it is applied to the conduct of private persons under the law of the State where the conduct occurs. That holding would not by itself be dispositive of this case, however, for the petitioners argue that liability is precluded by the "discretionary function" exception in the Act. While the Court does not reach this issue, I shall state briefly the reasons for my conclusion that the exception is inapplicable in this case.

No right of action lies under the Tort Claims Act for any claim

"based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U. S. C. § 2680 (a).

The Assistant Attorney General who testified on the bill before the House committee indicated that this provision was intended to create no exceptions beyond those that courts would probably create without it:

"[I]t is likely that the cases embraced within that subsection would have been exempted from [a bill

that did not include the exception] by judicial construction. It is not probable that the courts would extend a Tort Claims Act into the realm of the validity of legislation or discretionary administrative action, but [the recommended bill] makes this specific." Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., ser. 13, p. 29.

The *Dalehite* opinion seemed to say that no action of a Government employee could be made the basis for liability under the Act if the action involved "policy judgment and decision." 346 U. S., at 36. Decisions in the courts of appeals following *Dalehite* have interpreted this language as drawing a distinction between "policy" and "operational" decisions, with the latter falling outside the exception.[10] That distinction has bedeviled the courts that have attempted to apply it to torts outside routine categories such as automobile accidents, but there is no need in the present case to explore the limits of the discretionary function exception.

The legislative history indicates that the purpose of this statutory exception was to avoid any possibility that policy decisions of Congress, of the Executive, or of administrative agencies would be second-guessed by courts in the context of tort actions.[11] There is no such danger

---

[10] See, *e. g.*, *Eastern Air Lines* v. *Union Trust Co.*, 221 F. 2d 62, aff'd, 350 U. S. 907; *Fair* v. *United States*, 234 F. 2d 288; *Hendry* v. *United States*, 418 F. 2d 774. For a thorough discussion of the "policy/operational" distinction that has developed, see Reynolds, The Discretionary Function Exception of the Federal Tort Claims Act, 57 Geo. L. J. 81 (1968).

[11] The policy behind the exception is explained by one leading commentator as follows: "[A]lmost no one contends that there should be compensation for all the ills that result from governmental operations. No one, for instance, suggests that there should be liability for the injurious consequence of political blunders such as the unwise imposition of tariff duties or the premature lifting of

in this case, for liability does not depend upon a judgment as to whether Government officials acted irresponsibly or illegally. Rather, once the creation of sonic booms is determined to be an activity as to which the doctrine of absolute liability applies, the only questions for the court relate to causation and damages. Whether or not the decision to fly a military aircraft over the respondents' property, at a given altitude and at a speed three times the speed of sound, was a decision at the "policy" or the "operational" level, the propriety of that decision is irrelevant to the question of liability in this case, and thus the discretionary function exception does not apply.

---

OPA controls. . . . The separation of powers in our form of government and a decent regard by the judiciary for its co-ordinate branches should make courts reluctant to sit in judgment on the wisdom or reasonableness of legislative or executive political action. Moreover, courts are not particularly well suited to pursue the examinations that would be necessary to make this kind of judgment." James, The Federal Tort Claims Act and the "Discretionary Function" Exception: The Sluggish Retreat of an Ancient Immunity, 10 U. Fla. L. Rev. 184 (1957).