**Sharon N. MELLOTT, as Personal Representative of the Estate of Thomas H. Mellott, individually and on Behalf of Locke Anthony Mellott, Echo Noele Mellott, Brittney Melenie Mellott, Mikaela Clarissa Mellott, Lake Dominic Mellott, and Domini Nicole Mellott, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CV–91–091–GF.**

United States District Court, D. Montana, Great Falls Division.

Oct. 14, 1992.

James R. Walsh, Dennis P. Clarke, Smith, Walsh, Clarke & Gregoire, Great Falls, MT, for plaintiffs.

George Darragh, Jr., Great Falls, MT, Stuart M. Gerson, Asst. Atty. Gen., Mary Jo Moltzen, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant.

HATFIELD, Chief Judge.

BACKGROUND

On June 20, 1989, an agricultural spray plane piloted by Thomas H. Mellott crashed after striking a guy wire anchoring a power pole on a power transmission line maintained by the Western Area Power Administration ("WAPA"), an agency of the United States of America. Plaintiff, Sharon Mellott, as the Personal Representative of the Estate of Thomas H. Mellott, and on behalf of the deceased's minor children, instituted the above-entitled action under authority of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671–2680, seeking monetary compensation based upon the negligence of the defendant United States, acting through WAPA. Plaintiff contends the defendant acted negligently in failing to mark the guy wire to provide adequate warning to low flying aircraft.[1]

Presently before the court is the government's motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(1), asserting this court lacks subject matter jurisdiction over the present controversy because plaintiff's claims fall within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).[2] Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

DISCUSSION

■ A party may bring a cause of action against the United States only to the extent the government has waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). The FTCA waives, with certain exceptions, the government's sovereign immunity as to claims based upon injury to or loss of property caused by the negligent or wrongful act or omission of a federal employee, acting within the scope of his employment, to the same degree that private individuals would be liable. *See*, 28 U.S.C. § 2674; *Laird v. Nelms*, 406 U.S. 797, 799, 92 S.Ct. 1899, 1900–01, 32 L.Ed.2d 499 (1972). Under 28 U.S.C. § 2680(a), however, the FTCA's waiver of the United States' sovereign immunity does not extend to "any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion be abused." 28 U.S.C. § 2680(a).

---

1. The only warning devices installed on the guy wires consisted of plastic yellow sheathing placed upon the lower six feet of the wires. It is undisputed that the purpose of this device was to increase the visibility of the wires for snowmobilers. Nothing was installed on the wires to warn aircraft.

2. While denominated a motion to dismiss for lack of subject matter jurisdiction, defendant's motion is properly treated as a motion for summary judgment under Rule 56, Fed.R.Civ.P., matters outside the pleadings having been submitted and considered by the court. Rule 12(b), Fed.R.Civ.P.

■ The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). If a discretionary function was involved, the fact a decision was negligently made will not bring the challenged conduct outside the exception. *Ayer v. United States*, 902 F.2d 1038, 1041 (1st Cir.1990), *citing, Dube v. Pittsburgh Corning*, 870 F.2d 790, 797 (1st Cir.1989).

■ The Supreme Court, in *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988), established a two-part test for determining whether an action against the United States is barred by the discretionary function exception. First, a court must determine whether the challenged conduct involves an element of choice for the acting employee: "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and the employee fails to follow that course of action. *Prescott v. United States*, 959 F.2d 793, 798 (9th Cir.1992), *quoting, Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958. Second, if the challenged conduct does involve a degree of choice, the court must determine whether that choice involved the kind of judgment Congress intended to protect:

The basis for the discretionary function exception was Congress' desire to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Ayer, supra*, 902 F.2d at 1041, *quoting, Berkovitz, supra*, 486 U.S. at 536–537, 108 S.Ct. at 1958–1959 (*quoting, Varig Airlines, supra*, 467 U.S. at 814, 104 S.Ct. at 2764–2765).

The Ninth Circuit Court of Appeals, in *Mitchell v. United States*, 787 F.2d 466 (9th Cir.1986), held the government's decision not to install warning devices on power transmission wires was protected by the discretionary function exception.

The BPA [Bonneville Power Administration] did not negligently install or maintain warning devices, but rather, affirmatively decided to adopt the FAA's [Federal Aviation Administration] policy of not marking ground wires below 500 feet. The Federal Aviation Act, 49 U.S.C. § 1421, authorized the FAA to regulate air safety. The BPA does not have similar statutory authorization and therefore chose to rely on FAA standards regarding whether to mark ground wires. Its choice to leave air space safety standards to be set chiefly by the FAA was "grounded in social, economic, and political policy." *Varig Airlines*, [467 U.S. at 814], 104 S.Ct. at 2765. Our review of this decision would encroach upon the agency's decision-making process; the exception therefore applies and we are without jurisdiction to review the agency's decision.

*Mitchell, supra*, 787 F.2d at 468, *citing, Begay v. United States*, 768 F.2d 1059 (9th Cir.1985).

In the present action, the defendant has submitted the affidavit of Ross Clark, the Chief of the Transmission Line Electrical Branch of the Division of Transmission Line and Building Design for WAPA, who testified:

5. It is WAPA's practice to mark or light its structures for purposes of air space safety when the Federal Aviation Administration (hereinafter FAA) recommends a warning device.

6. If the FAA recommendation under a given set of circumstances is not to light or mark, WAPA still may choose to go beyond the established FAA guidelines. In some of these cases, WAPA does mark or light the structure to warn aircraft, and in some cases it does not. WAPA's choice is based on the technical, economic, social, environmental, and political factors which are present in each situation.

Accordingly, the court concludes WAPA's decision not to mark the guy wires to warn aircraft was "grounded in social, economic, and political policy," and, as a result, the discretionary function exception divests this court of jurisdiction to review the decision. *See, Mitchell*, 787 F.2d at 468.

In the case *sub judice*, plaintiff concedes WAPA's decision whether to mark the guy wires involved a matter of choice. However, the plaintiff emphasizes conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice—"it must be a choice rooted in social, economic or political policy." *Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1504 (9th Cir.1989). Consequently, plaintiff contends *Mitchell* is distinguishable from the present action because the WAPA, unlike the Bonneville Power Administration, did install warning devices on the guy wires. Invoking the "Good Samaritan" doctrine of negligence,[3] plaintiff asserts once the WAPA decided to mark the wires to warn snowmobilers, it assumed the duty to use due care and mark the wires to warn all foreseeable traffic in the area, including low flying aircraft. The court, however, is unpersuaded by plaintiff's argument.

First, *Indian Towing*, contrary to plaintiff's suggestion, is distinguishable. In *Indian Towing*, the Supreme Court held the government was subject to suit under the FTCA for the loss of a ship caused by the Coast Guard's failure to maintain a lighthouse in good working order. The Court held that while the initial decision to build and maintain the lighthouse was discretionary, once the Coast Guard "exercised its discretion to operate [the lighthouse] and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order...." *Indian Towing*, 350 U.S. at 69, 76 S.Ct. at 126–127.

The discretionary function exception was not at issue in *Indian Towing* because the government conceded the exception did not apply. *See, Varig Airlines*, 467 U.S. at 812, 104 S.Ct. at 2763. Rather, the government therein argued an implied exception to the FTCA existed for activities of a "uniquely governmental function." *Indian Towing*, 350 U.S. at 64–65, 76 S.Ct. at 124–125. As a result, the Court did not specifically address the relationship between the discretionary function and the "Good Samaritan" doctrine. *See, Kennewick Irrigation District v. United States*, 880 F.2d 1018, 1024–1025 (9th Cir.1989) ("The more likely inference is that inspecting, repairing and maintaining the lighthouse involved decisions grounded not on political, economic or social, but rather on technological or scientific considerations.").

■ If, in the exercise of its discretion, the government determines to undertake the provision of a particular service, it may be held liable under the "Good Samaritan" doctrine if (1) the government induces reliance upon the service and (2) by negligently performing the service creates a condition of danger. *See, Brown v. United States*, 790 F.2d 199 (1st Cir.1986), *cert. denied*, 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989 (1987). *See also, Berkovitz*, 486 U.S. at 538 n. 3, 108 S.Ct. at 1959 n. 3; *Kennewick*, 880 F.2d at 1024–25. In assessing whether the government induced reliance upon its undertaking, proper consideration must be given to the scope of the undertaking.

In the present situation, the WAPA undertook to install warning devices for the benefit of snowmobilers, and presumably other users of the property in the vicinity of the guy wires. In so doing, the government undoubtedly engendered reliance by those individuals upon the warning devices and became obligated to use reasonable

---

3. Under the "Good Samaritan" doctrine, once one assumes the duty to act towards a particular person, and engenders reliance thereon by that person, there is then a legal obligation to act with care and an obligation not to worsen the situation. *see,* Restatement (Second) of Torts §§ 323, 324, 324A. "Good Samaritan" liability may be imposed upon the government under

the FTCA where physical safety is involved. *See, Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Love v. United States,* 915 F.2d 1242, 1248 (9th Cir. 1989). Montana, of course, recognizes the "Good Samaritan" doctrine of negligence. *Love,* 915 F.2d at 1248.

care in maintaining those devices. The WAPA did not, however, in the exercise of its discretion, undertake to provide similar warning devices for the benefit of aviators. The decision not to engage in that undertaking is a decision falling within the discretionary function exception.

Second, plaintiff's attempts to invoke concepts of negligence ignores the fact that negligence is irrelevant to the discretionary function issue. *Mitchell*, 787 F.2d at 468. If a discretionary function was involved, the fact a decision was negligently made will not bring the challenged conduct outside the exception. *Ayer, supra*, 902 F.2d at 1041. "The mere fact that the Supreme Court held in *Indian Towing* that the government should be held to the standard of due care does not address whether the two-part test of *Berkovitz* was met in this case." *Id.* at 1042.

In this court's opinion, application of the *Berkovitz* test compels the conclusion that WAPA's decision to mark the wires for ground traffic also falls within the discretionary function exception. The government has submitted affidavits articulating the basis for its decision, *i.e.*, the concerns raised by landowners in the area, the cost effectiveness of putting plastic sheathing on the wires and the beneficial and adverse environmental effects of marking the wires. Plaintiff has failed to present a persuasive argument, supported by any facts of record, challenging the discretionary nature of WAPA's decision.

Finally, plaintiff has failed to present a persuasive argument, supported by recognized authority, in support of her novel argument that WAPA's decision to place markers for ground traffic obligated it to place markers on the entire length of the guy wires.

CONCLUSION

Accordingly, for the reasons set forth herein, the court is compelled to conclude the United States' motion to dismiss be, and the same hereby is, GRANTED.

IT IS SO ORDERED.