28 F.3d 104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ARCADE WATER DISTRICT, a public agency of the State of
California, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-15290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1994.
Decided July 8, 1994.
 
 Before: Goodwin, Pregerson, and Rymer, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Arcade Water District ("Arcade"), a California public agency, appeals the district court's judgment, following a bench trial on remand from this Court, in Arcade's action under the Federal Tort Claims Act (28 U.S.C. Sec. 2674 et seq.). Arcade seeks damages for the contamination of one of its water wells, allegedly caused by the federal government's negligent operation of a military base laundry. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 3
 At the military base laundry, the United States employed a zeolite softening process: wastewater from 2,400 pounds of sodium chloride each day entered a holding basin, was treated in a sewage treatment plant and was released into Magpie creek. The wastewater percolated into the ground and flowed in the direction of Arcade's Well No. 31 ("Well 31"). See Arcade Water Dist. v. United States, 940 F.2d 1265 (9th Cir.1991), for a complete discussion of relevant facts.
 
 
 4
 On November 7, 1988, Arcade filed an amended complaint in federal district court based on a continuing nuisance theory. The complaint sought damages to compensate for Arcade's inability to use Well 31 during the two-year period (February 28, 1982 to February 28, 1984) preceding the filing of its administrative complaint.[1] The district court dismissed Arcade's complaint with prejudice because it found that the alleged contamination constituted a permanent nuisance as a matter of law, recovery for which was barred by the statute of limitations.
 
 
 5
 Arcade appealed. We reversed and remanded to the district court, finding that Arcade's amended complaint stated a claim for continuing nuisance under California law. Arcade Water Dist., 940 F.2d at 1269.
 
 
 6
 On remand, the district court found that Arcade met its burden of proving that a continuing nuisance existed on its property, but nonetheless entered judgment in favor of the United States. Relying in substantial part on testimony from the government's expert witness, Roger A. Minear, the court rejected Arcade's arguments that the United States negligently caused or permitted the nuisance to Well 31.
 
 
 7
 [Arcade] failed to establish by a preponderance of the evidence (1) that defendant knew or reasonably should have known that its conduct would create an unreasonable risk of harm to [Arcade] through contamination of Well No. 31, or (2) that defendant failed to comply with the reasonable practices and procedures then known and followed in the applicable sanitary and related engineering trades.
 
 
 8
 (Memo of Decision, pp. 13-14). Also as part of its holding, the district court stated that although it believed a presumption of negligence per se did not apply, if it did, the government's evidence rebutted it.
 
 
 9
 In addition, the district court found that, even if the government had been negligent, Arcade could not recover because it sustained no damages. The parties had stipulated to the district court that between February 28, 1982 and February 28, 1984, Arcade was able to provide uninterrupted water service to its customers because Arcade drilled a new well in an uncontaminated aquifer. (ER 67:3). The parties had stipulated also that Arcade did not suffer a loss in gross income during this two-year period due to the closure of Well 31. (Id.) Arcade appeals.
 
 ANALYSIS
 
 10
 Under the Federal Tort Claims Act (the "FTCA"), the United States waives its sovereign immunity for injuries arising from its negligence and the negligence of its employees. The FTCA renders the United States liable for "injury to loss of property ... caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment ... if a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. Secs. 1346(b), 2672. Only negligence is actionable; the United States is not liable for most intentional torts, see 28 U.S.C. Sec. 2680(h), or for any ultrahazardous activities subject to strict liability, see Borquez v. United States, 773 F.2d 1050, 1052 (9th Cir.1985) (citing Laird v. Nelms, 406 U.S. 797, 800 (1972)).
 
 
 11
 California law applies because the federal government's liability depends on the law of the state where the tort occurred, see Secs. 28 U.S.C. 1346(b), 2672; Arcade Water Dist., 940 F.2d at 1267 (citations omitted). Arcade contends that government employees negligently caused or permitted a continuing nuisance (migration of water contaminants) to be maintained on Arcade's Well 31. To prevail, Arcade must prove by a preponderance of the evidence that the United States owed a duty to act with ordinary care and breached that duty, thereby injuring Arcade. See B.E. Witkin, 6 Summary of California Law Secs. 732-33 (9th ed. 1988). Arcade may prove breach of the duty of care by direct and circumstantial evidence. Arcade may also rely on a rebuttable presumption of negligence per se if the United States violated a statute that triggers a presumption of negligence, see infra discussion on Cal.Evid.Code Sec. 669(a).
 
 
 12
 The district court found that Arcade failed to establish common law negligence and that Arcade was not entitled to rely on a presumption of negligence per se. Negligence is a mixed question of law and fact. "The existence and extent of the standard of conduct are questions of law ... [whereas] issues of breach and proximate cause are questions of fact...." Vollendorff v. United States, 951 F.2d 215, 217 (9th Cir.1991)). (citation omitted). Because this is an appeal from a bench trial, we review the district judge's findings of fact, whether based on oral or documentary evidence, for clear error, giving due regard to the court's opportunity to judge the credibility of witnesses. Fed.R.Civ.P. 52(a); Brooker v. Desert Hospital Corp., 947 F.2d 412, 415 (9th Cir.1991) (citations omitted). We review the district court's conclusions of law de novo. Brooker, 947 F.2d at 415 (citation omitted).
 
 
 13
 (1) Common Law Negligence
 
 
 14
 Arcade challenges the district court's factual finding that Arcade failed to establish common law negligence. Arcade contends that the court's finding was clearly erroneous because it was based on disputed and illogical opinion testimony from the government's expert witness. We disagree. The court made its finding "[a]fter carefully weighing the conflicting opinions of expert witnesses and the respective bases upon which they arrived at their conclusions, together with all other evidence presented on the issue...." (Memo of Decision, p. 14).
 
 
 15
 At trial, Arcade's expert witness and the government's expert witness both agreed that the United States would have created an unreasonable danger if it had allowed wastewater discharged by the laundry to flow undiluted to Magpie Creek and contaminate the groundwater beneath Well 31. (RT 48, 66-67, 70-72).[2] They disagreed about whether the sodium chloride disposed of by the laundry (2,400 pounds each day) was diluted before reaching the creek. Arcade's expert witness, Edwin R. Stowell, testified that the sodium chloride was not diluted in the holding pond. Mr. Stowell stated that the government's operation of the laundry was "equivalent to dumping more than a ton of salt every workday into a creek--I don't know how anyone in his right mind wouldn't think that's damaging to the groundwater.... [S]omewhere along the line someone should have blown the whistle[.]" (RT 31). Mr. Stowell testified that the state of the art knowledge in 1942 recognized the danger to the groundwater posed by introducing salts into the creek this way. (RT 14).[3] It was also an accepted fact that the United States could have avoided using salts by using additional soap. (ER 80:43-44) (Water softening conserves soap; it was an economic choice whether to use softeners.).
 
 
 16
 In contrast, the government's witness, Dr. Roger Minear, testified that the sodium chloride disposed of by the laundry each day was diluted by the holding pond water to such an extent that the United States did not and could not reasonably have known that the wastewater discharged from the sewage treatment plant would ultimately contaminate the groundwater beneath Well 31. (See ER 89:9; RT 49-54). In Dr. Minear's opinion, the United States acted very responsibly. The government never dumped wastewater directly into its sewage treatment plant. Instead, the government built a holding basin into the water system's design; dilution of waste brine, followed by discharge, was considered an acceptable disposal practice by knowledgeable professionals in the field. (RT 66-67).[4]
 
 
 17
 Based on our review of the entire record, we cannot say that the district court clearly erred by believing Dr. Minear's testimony over Mr. Stowell's testimony. Certainly " 'the district court's account of the evidence is plausible,' " meaning that " '[we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.' " Service Employees Int'l Union v. Fair Political Practices Comm'n, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574-75) (1985)), cert. denied, 112 S.Ct. 3056 (1992).[5]
 
 
 18
 (2) Negligence Per Se
 
 
 19
 Under Cal.Evid.Code Sec. 669(a), a person is presumed to have failed to exercise due care if the person violated a statute, ordinance, or regulation of a public entity, the violation proximately caused injury to person or property, the statute, ordinance, or regulation was designed to prevent the type of injury that occurred, and was adopted to protect the class of persons that includes the injured plaintiff. The presumption is rebuttable, see infra discussion on Cal.Evid.Code Sec. 669(b)(1).
 
 
 20
 The FTCA subjects the United States to the same negligence liability that applies to private persons under state law, 28 U.S.C. Secs. 1346(b), 2672. In short, the United States has a duty to comply with all standards of care applicable to private persons. Thus, California's water pollution control statutes, allegedly violated by the United States,[6] are binding upon the federal government for purposes of negligence per se analysis. See Clark v. United States, 660 F.Supp. 1164, 1177 (W.D.Wa.1987) ("When under local law the conduct of the wrong-doer would be regarded as negligence per se, the same rule is applicable to the United States as would be applicable to a private person."), aff'd, 856 F.2d 1433 (9th Cir.1988).[7]
 
 
 21
 Arcade alleges that the United States violated statutes that prohibit: (1) wastewater discharges that cause contamination, pollution, and nuisance, Cal.Health & Safety Code Sec. 5411; (2) refuse deposits in places where it can pass into state waters, Cal.Fish & Game Code Sec. 5650(b); and (3) washing clothes in waters intended for drinking, Cal.Health & Safety Code Sec. 4456. See supra note 6. However, the negligence per se doctrine does not apply unless the statute allegedly violated sets forth a specific standard of conduct. Fagerquist v. Western Sun Aviation, Inc., 236 Cal.Rptr. 633, 640 (Cal.App.1987). We need not decide whether these statutes are specific enough to trigger a presumption of negligence, because the district court assumed that the presumption applied.
 
 
 22
 Nevertheless, the district court also found that the United States rebutted any presumption of negligence. The presumption of negligence may be rebutted by proof that the person "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law...." Cal.Evid.Code Sec. 669(b)(1). Rebuttal of the presumption involves a question of fact--whether the United States proved that it "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desires to comply with the law...." Cal.Evid.Code Sec. 669(b)(1). The district court based its conclusion that the presumption was rebutted in substantial part on Dr. Minear's testimony that the United States did not and could not reasonably have known that its conduct would cause contamination of Well 31. The court's conclusion was also based on Dr. Minear's testimony that the government acted in accordance with accepted procedures. We cannot say that the district court clearly erred by finding that the United States proved that "it is more probable than not that the violation of the statute was reasonable and justifiable under the circumstances," Cal.Evid.Code Sec. 669 cmt. (1967) ("Since the ultimate question is whether the opponent of the presumption was negligent rather than whether he violated the statute, proof of justification or excuse under subdivision (b) negates the existence of negligence instead of merely establishing an excuse for negligent conduct.").[8]
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On February 28, 1984, Arcade filed an administrative complaint under the Federal Tort Claims Act (the "FTCA"), alleging the federal government's liability for the contamination of Well 31. The administrative complaint was rejected because it was untimely, see 28 U.S.C. Sec. 2401(b) (requiring filing within two years after claim accrues), and because there was no negligent or wrongful act by government employee
 
 
 [2]
 Both experts agreed that the sodium chloride was not removed by the sewage treatment process. Biological treatment cannot remove salts. (RT 67)
 
 
 [3]
 In addition, Mr. Stowell stated that by placing the salts in solution, the laundry's treatment process "ma[de the salts] more soluble and more able to percolate into [and contaminate] the groundwater." (RT 13)
 
 
 [4]
 Dr. Minear explained the process in greater detail as follows: The waste brine was discharged into the holding basin along with a much larger amount of water that was discharged from the laundry's wash cycle. The basin diluted the wastewater before feeding it into the sewage treatment plant. The basin also cooled the wastewater, in conformance with the accepted practice of never discharging hot water directly into a treatment stream. After dilution, the discharge concentration into Magpie Creek would average no more than 205 parts per million (205 milligrams per liter) total dissolved solids (salt) per day, well within discharge limits for drinking water. (RT 51-52). The water in Magpie Creek further diluted the wastewater during the six months of natural stream flow each year. The dilution capacity of the receiving water (e.g., Magpie Creek) was a factor used for designing wastewater treatment systems in the 1940's up into the 1960's. (RT 53-54)
 
 
 [5]
 Nor are we persuaded by Arcade's arguments attacking Dr. Minear's opinions. It is immaterial that Dr. Minear testified it was highly unlikely that the laundry operation contaminated Well 31, (RT 64-65, 164-165), after the parties had stipulated that the laundry was the most likely source of contamination. We disagree with Arcade that the existence of contamination in Well 31 means inextricably that no dilution occurred and that the United States acted negligently. As the United States points out in its brief, even admitting that the laundry was the source of the well's contamination, Arcade never proved that the federal government's negligence was to blame. Injury to the well, absent negligence, cannot sustain an action under the FTCA. Even reasonable conduct (e.g., ensuring a dilution process for wastewater disposal) does not guarantee against resulting harm, but it may be sufficient to avoid negligence liability
 
 
 [6]
 Arcade contends that the government's operation of the laundry violated the following California water pollution control statutes: Cal.Health & Safety Code Sec. 5411 ("No person shall discharge ... waste, in any manner which will result in contamination, pollution or a nuisance."); Cal.Health & Safety Code Sec. 4456 (creating misdemeanor liability for any person who washes clothes in waters which are used or intended for drinking); Cal.Fish & Game Code Sec. 5650(b) ("It is unlawful to deposit in, permit to pass into, or place where it can pass into the waters of this state ... [a]ny refuse from ... [a] factory of any kind."); Cal.Civil Code Sec. 3479 (defining nuisance); Cal.Water Code Sec. 13005 (same) (repealed 1969); Cal.Water Code Sec. 13050(k)-(m) (defining contamination, pollution, and nuisance) (adopted 1969)
 
 
 [7]
 The Seventh Circuit agrees with our application of the negligence per se doctrine in FTCA cases. In American Exchange Bank v. United States, 257 F.2d 938 (7th Cir.1958), the state of Wisconsin sought to establish negligence liability based on the federal government's violation of the Wisconsin Safe Place Statute, even though the United States could not be held liable for the statutory violation. The court explained:
 The Safe Place Statute sets up a standard of care which replaces the common law for persons in Wisconsin insofar as public buildings and places of employment are concerned.... It is the federal government, through the Tort Claims Act, that has consented to liability the same as is imposed upon a private person in Wisconsin.
 It seems clear to us that Congress has said in unambiguous language that the United States is to be treated exactly as a private individual and not as a sovereign entity in determining its liability.
 Id. at 940.
 
 
 [8]
 Because we affirm the district court's decision that the United States was not negligent in operating the laundry, we do not need to address Arcade's contention that the district court erred by finding that Arcade sustained no damages