Rosalyn BROOKER, Plaintiff–Appellant,

v.

DESERT HOSPITAL CORP., Defendant–Appellee,

California Medical Association, Amicus.

No. 90–56193.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1991.

Decided Oct. 21, 1991.

R. Brian Oxman, Santa Fe Springs, Cal., for plaintiff-appellant.

Mitchell C. Tilner, Horvitz & Levy, Encino, Cal., for defendant-appellee.

Kimberly S. Davenport, California Medical Ass'n, San Francisco, Cal., for amicus.

Before BEEZER, HALL and WIGGINS, Circuit Judges.

BEEZER, Circuit Judge:

Following a bench trial, the district court entered judgment for the defendant on Rosalyn Brooker's claims that Desert Hospital refused to treat her and transferred her in violation of 42 U.S.C. § 1395dd and California law. We affirm.

## I

On the evening of January 25, 1988, Brooker was admitted to Desert Hospital's emergency room complaining of chest pains. She was diagnosed with a probable acute myocardial infarction (heart attack) and was admitted to the Coronary Care Unit under the supervision of Dr. Narasimha Rao, a cardiologist. On January 26, 1988, a number of tests, including a coronary angiography, revealed a 99 percent occlusive obstruction of the left anterior descending artery and 70 percent obstruction of the right posterior ·descending artery.

Sometime on January 26th, Brooker and Dr. Rao discussed treatment possibilities. Brooker asserts that Dr. Rao informed her that there were two treatment options, coronary angioplasty (the use of a balloon to dilate a coronary artery) and coronary bypass surgery. Brooker further asserts that she chose angioplasty and informed Dr. Rao of that decision. Dr. Rao testified that after reviewing the results of the coronary angiography, he determined that bypass surgery was the proper treatment for Brooker.

Dr. Rao testified that he chose bypass surgery over angioplasty because: (1) the 99 percent blockage of the anterior descending artery represented a situation too critical for angioplasty, (2) Brooker's symptoms indicated that there was an increased potential for complications, and (3) the 70 percent blockage of the posterior descending artery was a problem that could not be solved by angioplasty because only single vessel angioplasty was being performed at that time.

On the evening of January 26, 1988, Dr. Rao informed Brooker that he wanted her to undergo treatment the next day, January 27th. It is unclear from the record whether Brooker and Dr. Rao agreed on the type of treatment that would be administered on the 27th. Brooker's condition deteriorated on the evening of the 26th and Dr. Rao consulted with Dr. John Postel, Desert Hospital's cardiac surgeon, about performing emergency surgery. In the early morning hours of the 27th, faced with an emergency heart failure, Dr. Rao inserted an intra-aortic· balloon pump to aid Brooker's heart. Dr. Rao's progress notes indicate that Brooker was "clinically stable" but overall in "critical condition."

On January 27, 1988, Dr. Rao learned that Dr. Postel would be unavailable to perform bypass surgery for several days due to a prior teaching commitment. The facts do not establish that Dr. Postel refused to perform bypass surgery, but rather that he intended to perform the surgery after completing his teaching commitment. Dr. Rao concluded that the best course of action was to perform the surgery as soon

as possible and thus he advised Brooker to consent to being transferred to another hospital where surgery could be performed without further delay.

Brooker consented and was transferred to Eisenhower Hospital on January 28, 1988, at approximately 11:00 a.m. At 11:15 a.m. on the 28th, an EKG evaluation was performed. Brooker asserts that this EKG reveals that she suffered a heart attack as a result of the transfer. At approximately 2:30 p.m. on the 28th, Brooker successfully underwent double coronary bypass graft surgery.

Brooker filed suit in federal district court against Desert Hospital and Dr. Postel for professional negligence, negligence per se, fraud and false advertising. Brooker established Federal jurisdiction by alleging a violation of 42 U.S.C. § 1395dd. Under section 1395dd, hospitals receiving Medicare funds and maintaining an emergency room are required to provide appropriate emergency medical screening and necessary stabilizing treatment. Section 1395dd also regulates the transfer of emergency patients from those hospitals. The district court exercised jurisdiction over the state causes of action under the court's powers of pendent jurisdiction.

The district court dismissed Dr. Postel as a defendant and the action was tried to the court. At the close of Brooker's case, the court directed a verdict for the defendant on Brooker's fraud cause of action. Following presentation of the evidence, the district court entered judgment against Brooker's remaining causes of action. Brooker's timely appeal challenges only the judgment entered on her federal and state malpractice claims.

## II

### A. Jurisdiction

Initially we must determine whether the Emergency Medical Treatment and Active Labor Act (the Act), 42 U.S.C. § 1395dd conferred jurisdiction on the district court. Desert Hospital asserts that a claim under section 1395dd must include an allegation that economic considerations motivated the alleged denial of treatment or wrongful transfer. The legislative history of the Act does indicate that Congress intended to prevent hospitals from refusing to treat or from dumping patients who lack insurance coverage. *See* H.R.Rep. No. 241, 99th Cong., 2d Sess., 27, *reprinted in* 1986 U.S.C.C.A.N. 42, 605; Note, *Preventing Patient Dumping*, 61 N.Y.U.L.Rev. 1186, 1187–88 (1986).

The language of the Act, however, does not set forth any specific economic status criteria that limit the types of individuals covered by the Act. For example, section 1395dd(a) requires an "appropriate medical screening examination within the capability of the hospital's emergency department" for "any individual ... [who] comes to the emergency department." Section 1395dd(b) requires emergency stabilizing treatment or an appropriate transfer to another medical facility for "any individual ... [who] comes to a hospital" with an emergency condition.

The Act, therefore, is not ambiguous as to the type of individuals covered. If a statute is clear and unequivocal on its face we need not resort to the statute's legislative history. *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961); *Pride v. Exxon Corp.,* 911 F.2d 251, 255 (9th Cir.1990).

Both the Sixth Circuit and the District of Columbia Circuit have considered the question whether section 1395dd covers only the indigent and uninsured. Both circuits held that any discrepancies between the language of the Act and its legislative history are overshadowed by the clarity of the Act. *See Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1039–41 (D.C.Cir. 1991); *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 268–269 (6th Cir.1990). As the *Gatewood* court noted, "[t]hough the Emergency Act's legislative history reflects an unmistakable concern with the treatment of uninsured patients, the Act itself draws no distinction between persons with and without insurance." 933 F.2d at 1040.

We follow the lead of the Sixth and District of Columbia Circuits and hold Con-

gress to its words. We hold that the Act applies to any and all patients, not just to patients with insufficient resources. Therefore, the district court properly exercised jurisdiction.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's findings of fact under the clearly erroneous standard giving due regard to the "opportunity of the trial court to judge of the credibility of the witnesses." Fed. R.Civ.P. 52(a); *Rozay's Transfer v. Local Freight Drivers, Local 208*, 850 F.2d 1321, 1326 (9th Cir.1988), *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). We review *de novo* the district court's conclusions of law. *Rozay's*, 850 F.2d at 1326.

### B. Violation of 42 U.S.C. § 1395dd

■ The district court held that Desert Hospital stabilized Brooker within the meaning of the Act and thus its transfer of Brooker to another medical facility did not violate section 1395dd. Brooker asserts that Desert Hospital both failed to provide the stabilizing treatment required by the Act and wrongfully transferred her while she was in an unstable condition.

Brooker was in a critical condition the entire time she was at Desert Hospital. A patient may be in a critical condition, however, and still be "stabilized" under the terms of the Act. The Act defines "stabilized" as follows:

> The term "stabilized" means, with respect to an emergency medical condition, that no material deterioration of the condition is likely, within reasonable medical probability, to result from the transfer of the individual from a facility.

42 U.S.C. § 1395dd(e)(4)(B) (1988).[1]

The Act did not require Desert Hospital to alleviate completely Brooker's emergency condition. The Act did not require the hospital to perform angioplasty or bypass surgery within a specified time period. Rather, the Act required the hospital to provide Brooker with appropriate medical screening and stabilizing treatment and to refrain from transferring her unless she was "stabilized." *See* 42 U.S.C. §§ 1395a–c.

As the district court found, the hospital met these requirements. The court found "nothing in the record to indicate that it was likely that the transfer would have any effect upon the plaintiff's condition." Additionally, Dr. Rao's progress notes following the insertion of the intra-aortic balloon pump indicate that Brooker was "clinically stable." The court did not err in concluding that no material deterioration in Brooker's condition was likely within reasonable medical probability. We therefore affirm the district court's judgment on the section 1395dd cause of action.

### C. Violation of California Health & Safety Code § 1317

■ Brooker asserts that Desert Hospital violated California Health & Safety Code section 1317 by refusing to provide adequate emergency services. Section 1317 is California's version of 42 U.S.C. § 1395dd; it directs a licensed hospital providing emergency services to provide these services to "any person" requesting such services for "any condition in which the person is in danger of loss of life" when "the health facility has appropriate facilities and qualified personnel available to provide the services or care." Cal.Health & Safety Code § 1317(a) (West 1990).

Subsection (c) bars liability in situations in which a refusal to provide care results from a "determination, exercising reasonable care ... that the health facility does not have the appropriate facilities or qualified personnel available to render those

---

1. In 1989, 42 U.S.C. § 1395dd(e) was amended in ways which do not affect our analysis. As a result of the 1989 amendment, the definition of "stabilized" is now contained in section 1395dd(e)(3)(B) rather than section 1395dd(e)(4)(B). Because the events in question took place in January 1988, we refer to the statute as it was then written. *See, Burditt v. United States Dep't of Health and Human Services*, 934 F.2d 1362, 1366 n. 1 (5th Cir.1991) (referring to version of 1395dd that existed at time of events in question); *Deberry v. Sherman Hospital Assn.*, 775 F.Supp. 1159, 1160 n. 1 (N.D.Ill. 1991) (same).

services." *Id.* § 1317(c). The district court determined that Dr. Rao made a reasonable determination that Brooker should be transferred to another medical facility because qualified personnel were unavailable at Desert Hospital.

Brooker asserts that the district court erred in its application of the facts to section 1317. According to Brooker, the unavailability of qualified personnel at Desert Hospital was due to Desert Hospital sponsoring a training program involving Dr. Postel. She maintains that section 1317(c)'s limitation on liability applies only to situations in which the unavailability of qualified personnel results from events beyond the hospital's control. She argues that any other interpretation would allow hospitals to shut down their emergency wards without cause and then refuse to provide treatment on the grounds that appropriate facilities or qualified personnel were not available.

Brooker's argument raises issues that we need not address. Brooker does not allege that Desert Hospital chose to close its emergency facilities in reaction to her specific needs for treatment. Rather, she acknowledges that the training program that made Dr. Postel unavailable on January 29th and 30th had been planned prior to Brooker's admission to the hospital.

Section 1317(c) indicates that the California legislature determined that a health facility may sometimes lack appropriate personnel and thus may reasonably refuse to render certain emergency care. Section 1317 does not indicate that a hospital's plan to make a surgeon temporarily unavailable would violate that section.

The district court determined that Brooker's transfer was based on a decision, made pursuant to the exercise of reasonable care, that qualified personnel were unavailable to render surgical services. Therefore, Desert Hospital did not violate section 1317. We affirm this determination.

## D. Negligence Per Se

▓ Brooker's cause of action for negligence per se is based on her allegation that Desert Hospital violated certain California regulations regarding hospital licensing. California law creates a rebuttable presumption of failure to exercise due care if a person violates a public regulation, the violation proximately causes an injury, the injury is of the type the regulation is designed to prevent, and the injured party is a type of person the regulation was meant to protect. Cal.Evid.Code § 669(a) (West Supp.1990); *see Short v. State Compensation Ins. Fund,* 52 Cal.App.3d 104, 110, 125 Cal.Rptr. 15, 19 (1975).

The district court found that Desert Hospital temporarily closed its coronary surgery unit and thus violated sections 70431 and 70433(d) of the California Administrative Code. These sections require hospitals to maintain appropriate staffing and ensure that cardiovascular surgical services are available at all times for emergencies. *See* Cal.Admin.Code. tit. 22, §§ 70431, 70433(d) (1988). The district court, however, also found that Brooker did not suffer any injury as a result of the violations and thus entered judgment for the defendant on Brooker's cause of action for negligence per se. Brooker asserts that the district court was correct in finding the code violations but was incorrect in finding that Brooker suffered no harm as a result of the violations.

We hold that the district court erred in finding that Desert Hospital temporarily closed its coronary surgery unit in violation of sections 70431 and 70433(d). The record does not support a finding that the hospital closed the unit and refused to perform emergency surgery on Brooker. As the district court noted, Dr. Postel opined that Brooker was in stable condition and that the surgery could wait until he was available to perform it on January 31st. Dr. Rao disagreed with Dr. Postel's prognosis and thus advised Brooker to accept a transfer to another facility where surgery would be performed immediately. Such a disagreement between doctors does not demonstrate the closure of a facility. There is nothing in the record to indicate what Dr. Postel would have done if he had determined that Brooker needed immediate surgery. The district court, therefore, clearly

erred in finding that Desert Hospital temporarily closed its coronary surgery unit.

Moreover, the district court erred in its application of section 70433(d) of the California Administrative Code. The district court held that Desert Hospital violated section 70433(d) by failing to provide cardiovascular surgical services at all times. However, section 70433(d) states that "cardiovascular surgical service shall be available at all times *for emergencies.*" Cal.Admin.Code. tit. 22, § 70433(d) (1988) (emphasis added). There was no showing that Desert Hospital's cardiovascular surgical services would not have been available if Brooker's condition became unstable and she required immediate surgery.

Brooker acknowledges that the training seminar Dr. Postel was attending was within five minutes of Desert Hospital. Thus, there was no showing that Desert Hospital did not have adequate personnel and equipment available to perform emergency cardiovascular surgery had the need arisen.

We hold that the district court erroneously concluded that Desert Hospital violated sections 70431 and 70433(d). Given this holding, we need not discuss whether the hospital's actions injured Brooker. Because there was no violation of either section, the district court's judgment on Brooker's cause of action for negligence per se is affirmed.

### III

The district court's judgment is

AFFIRMED.