37 F.3d 1504
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Joseph M. CARPINO, Plaintiff-Appellant,
v.
Peter DEMOSTHENES and James Sanders, Defendants-Appellees.
 No. 93-15694.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 7, 1994.*
Decided Oct. 13, 1994.
 
 1
 Before: PREGERSON and WIGGINS, Circuit Judges, and FONG,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Nevada state prisoner Joseph M. Carpino ("Carpino") appeals the district court's judgment, following a bench trial, in favor of prison officials in Carpino's 42 U.S.C. Sec. 1983 action, alleging that corrections officer trainee James Sanders ("Sanders") violated the Eighth Amendment when he fired a shot at and injured Carpino, and that corrections officer Peter Demosthenes ("Demosthenes") violated the Fourteenth Amendment by improperly training and supervising Sanders. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 
 4
 Because this is an appeal from a bench trial, we review the district judge's findings of fact, whether based on oral or documentary evidence, for clear error, giving due regard to the court's opportunity to judge the credibility of witnesses. Fed.R.Civ.P. 52(a); Brooker v. Desert Hospital Corp., 947 F.2d 412, 415 (9th Cir.1991). We review the district court's conclusions of law de novo. Brooker, 947 F.2d at 415.
 
 
 5
 I. Sanders' Conduct And The Eighth Amendment
 
 
 6
 The use of excessive force by a prison official violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. An Eighth Amendment violation occurs only when a prison official applied force "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992). To determine whether the use of force was wanton and unnecessary in a given case, relevant factors include: "the extent of injury suffered[,] ... the need for application of force, the relationship between that need and the amount of force used, the threat [to the safety of staff and inmates] 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " Id. (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)).
 
 
 7
 There is no Eighth Amendment violation if "force was applied in a good-faith effort to maintain or restore discipline...." Id. " 'Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " Whitley, 475 U.S. at 322-23 (citation to quoted case omitted).
 
 
 8
 We agree with the district court's conclusion that Sanders did not act with excessive force when he discharged a live birdshot directly behind Carpino's feet; Sanders' use of force constituted a good faith effort to defuse a volatile situation that threatened prison discipline and security.
 
 
 9
 The district court found that it was reasonable for Sanders to believe that the confrontation between Carpino and protective custody inmate Farrar would result in immediate serious injury if Sanders did not act quickly as he did. ER 7-8. In particular, the court found that Sanders gave at least two audible warnings (including ordering the men to drop to the ground and firing a blank round) before firing the live birdshot, and found that Carpino ignored the warnings, in violation of prison rules. ER 13. The court also found that the men were in a fighting position with clenched fists, Carpino was in pursuit of Farrar, there had been a shakedown and a lockdown at the prison, and Sanders had been advised in advance of a potential conflict involving Farrar. Id. These factual findings, based in large part on the district court's determination that Sanders' testimony was more credible than Carpino's testimony, see ER 42, were not clearly erroneous. We are not "left with the definite and firm conviction that a mistake has been committed[,]" Sawyer v. Whitley, 112 S.Ct. 2514, 2522 n. 14 (1992), in finding that Sanders was responding to an immediate threat of serious injury.
 
 
 10
 As the district court points out, even if Sanders' conduct was negligent, the wantonness standard for Eighth Amendment violations requires more than a failure to exercise ordinary care; it requires deliberate disregard of a prisoner's rights. Carpino offered no evidence to support a finding that Sander's actions were done maliciously or sadistically to cause harm. Carpino's primary argument is that Sanders violated prison rules. A deliberate violation of prison rules might evidence wantonness on Sanders' part, but we do not find any such violation in light of the district court's finding that immediate serious injury was threatened. See ER 46-48 (employee may use force to obtain an inmate's compliance with his order if no alternative method is effective and where the circumstances require immediate performance, Nevada Dep't of Prisons Admin.Reg. No. 405V. (A)(4)(a); employee may fire shots directly at an inmate to prevent an act which could result in serious bodily injury after giving a clear verbal warning or order and after firing warning shots,[1] id. 405V. (C)(1)(a)(3)(a)-(b); employee should "shoot to disable" by shooting at the legs if the inmate does not possess a deadly weapon, id. 405V. (C)(1)(a)(3)(c)).
 
 
 11
 Whether the force used by Sanders amounted to deadly force under the prison rules is irrelevant because even deadly force is constitutionally permissible under certain circumstances if it is not applied sadistically to cause harm. See Hudson, 112 S.Ct. at 999; Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979) ("The infliction of pain and the danger of serious harm may be necessary if there is a threat of an equal or greater harm to others....").
 
 
 12
 II. Demosthenes' Conduct And The Fourteenth Amendment
 
 
 13
 We assume, as the district court did, (op. p. 15), that Demosthenes had final authority to establish prison training and supervision policies at the time in question. Nonetheless, Carpino has not identified any decisions by Demosthenes that directly caused a violation (by trainee Sanders) of Carpino's constitutional rights to be free from improper uses of force.
 
 
 14
 The parties and the district court focus exclusively on the requirements for municipal liability under 42 U.S.C. Sec. 1983.[2] A prisoner may maintain a Sec. 1983 action for violation of Fourteenth Amendment due process "where the failure to train [or supervise prison employees] amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (municipal liability attaches only where a training program is inadequate due to policymakers deliberate indifference to the need for more or different training to prevent constitutional violations by employees).
 
 
 15
 That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better training.... Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program.... And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program....
 
 
 16
 Moreover, for liability to attach ... [the plaintiff] must still prove that the ... injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]
 
 
 17
 Id. at 391-92.
 
 
 18
 The district court found that Carpino failed to establish by a preponderance of the evidence that Demosthenes was recklessly indifferent in training or supervising Sanders. We agree. To support his "deliberate indifference" claim on appeal, Carpino offers only conclusory statements without supporting evidence. He characterizes the prison policy as a "lay 'em down or shoot 'em down" policy which conflicts directly with applicable regulations on the use of force. He argues that Demosthenes abandoned proper prison policy for a policy of his own that enhances the risk of serious injury to inmates who disobey orders. And, he argues that but for Demosthenes' deliberate indifference to prisoners' rights, Sanders would not have believed he was justified to shoot at Carpino as he did, thereby injuring Carpino.
 
 
 19
 The record does not establish a prison policy of "deliberate indifference" to prisoners' rights. As a corrections officer trainee, Sanders participated in a 15-day formal training course, and informal on-the-job training thereafter, under supervision for one year. ER 3-4. Sanders had been working at the prison for over eight months before the incident giving rise to this lawsuit. ER 2, 4. He had received training on the use of a shotgun, including how the gun works, how to load it, how to fire directly into targets, and how to skip rounds into targets. ER 19. Sanders had also been taught the administrative regulations relating to the use of force. ER 7. Sanders' supervisor knew when Sanders was working in a lockdown unit such as Unit 8, and told him to use his best judgment if a problem arose. ER 7-8. These training and supervision policies are constitutional.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Harold M. Fong, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Warning shots should be fired into the air but may be fired into the ground near the problem inmates if the officer feels that firing into the air would not stop the prohibited conduct or if firing into the air fails to stop such conduct. Nevada Dep't of Prisons Admin.Reg. No. 405V. (C)(1)(b)(1), (3)-(4)
 
 
 [2]
 We will address their arguments even though the arguments are inapposite because Carpino did not sue the municipality