**Thomas L. DERON, Plaintiff,**

v.

**Louie WILKINS, M.D. and King's Daughters Hospital, Defendants.**

**Civ. A. No. 4:93CV–13(L)(C).**

United States District Court, S.D. Mississippi, Eastern Division.

Feb. 2, 1995.

Crymes G. Pittman, Pittman, Germany, Roberts & Welsh, John G. Jones, Jackson, MS, for plaintiff.

Cary E. Bulkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, for Louie Wilkins, M.D.

J. Robert Ramsay, Bryant, Clark, Dukes, Blakeslee, Ramsay, Hattiesburg, MS, for King's Daughters Hosp.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Several matters are presently pending before this court for consideration, as follows: (1) plaintiff Thomas L. Deron's objections to the report and recommendation of the magistrate judge denying his motion for leave to amend his complaint; (2) defendant King's Daughters Hospital's motion for summary judgment; and (3) the motion of defendant Louie Wilkins, M.D., for partial summary judgment and to dismiss or transfer for lack of subject matter jurisdiction. The appropriate parties have filed responses and accompanying memoranda on each of the referenced motions and the court, having considered these motions, makes the following findings and conclusions.

## PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

By order dated October 21, 1994, Magistrate Judge Alfred G. Nicols, Jr. denied plaintiff's motion to amend her complaint to add Dr. Gene Hutcheson as a defendant, finding that plaintiff "could and should have

discovered any such claims against Dr. Hutcheson well before the conclusion of discovery, and that it would not be in the interest of justice to allow an amendment at this stage of the litigation." In the court's opinion, plaintiff has not demonstrated that the magistrate judge's ruling was either clearly erroneous or contrary to law, *see* Fed.R.Civ. Proc. 72(a), and therefore, the court will overrule plaintiff's objections to the report and recommendation.

## THE MOTIONS FOR SUMMARY JUDGMENT

Plaintiff filed this action on February 1, 1993, alleging that both named defendants, King's Daughters Hospital (the Hospital) and Dr. Wilkins, violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, and further alleging state law medical malpractice claims against Dr. Wilkins. The facts, as gleaned from the complaint and the various exhibits furnished by the parties, appear as follows.

On February 3, 1991, following an automobile accident, the plaintiff was transported to King's Daughters Hospital in Brookhaven, Mississippi, where he was seen in the emergency room and subsequently admitted by Dr. Wilkins, a general surgeon, to the Hospital's intensive care unit. He was diagnosed with a fracture of the right kidney, avulsion of the right brachial plexus with complete paralysis of the right arm, and a fractured duodenum. On February 7, Dr. Wilkins performed surgery on the plaintiff to repair a rupture or tear of the duodenum. He sutured the tear, drained the secretions and closed the surgical wound. Thereafter, plaintiff developed a reaccumulation of fluid in his abdominal cavity, for which Dr. Wilkins performed repeat surgery on February 14 to drain the fluids. Plaintiff alleges that two days later, on February 16, he began to bleed profusely from the surgical wound, and continued to bleed from the wound through February 18, when he began to bleed from the mouth as well.

Dr. Wilkins consulted with Dr. Gene Hutcheson, an internist in Brookhaven with whom he had been consulting concerning plaintiff's condition, and the two agreed that in order to avoid an emergency surgical procedure for the purpose of arresting the plaintiff's hemorrhaging, which they say they believed was the result of probable stress ulceration, the plaintiff should instead have endoscopy and fulguration by a gastroenterologist. However, because the Hospital lacked the requisite specialists on staff or the equipment to perform these procedures, Dr. Hutcheson contacted Dr. Cynthia L. Haden–Wright, a gastroenterologist on the staff of Mississippi Baptist Medical Center (MBMC) in Jackson, Mississippi, to inquire whether she would accept a transfer of the plaintiff. She agreed to do so, and arranged for her associate, Dr. Billy Long, to attend to the plaintiff upon his arrival.

Following Dr. Haden–Wright's agreement to accept plaintiff for treatment, arrangements were made to transfer him to MBMC by ambulance. In preparation for the transfer, blood transfusions were initiated intravenously and the plaintiff's wounds were cleaned and packed. Several additional units of packed red blood cells were sent in the ambulance for infusion if the need arose. At the time of transport, the plaintiff was receiving normal saline with packed red blood cells intravenously along with other intravenous medications. Oxygen, defibrillation and resuscitation equipment were on board in the ambulance if the need arose, and trained emergency medical technicians were on board to monitor and care for him during the transfer.

Plaintiff alleges that once the plaintiff arrived at MBMC, his body was permeated with severe sepsis and infection which had gone untreated by Dr. Wilkins. He states that because of his condition, he was admitted to MBMC, not by Dr. Long, the gastroenterologist, but rather by a surgeon,[1] and underwent surgery the following day. He has subsequently undergone additional sur-

---

1. Though it is not altogether clear from the record, it appears that Dr. Long, after examining the plaintiff, concluded that his condition required surgical intervention and therefore called in a surgeon to treat the plaintiff rather than performing the endoscopy and fulguration for which plaintiff had been transferred.

geries which have included, *inter alia,* the removal of his stomach. Plaintiff alleges that he is now permanently and totally disabled, and seeks to recover damages.

Plaintiff alleges state law claims against both Dr. Wilkins and the Hospital. He charges that Dr. Wilkins was negligent in failing to timely diagnose and properly treat the tear or rupture of his duodenum, and in failing to timely diagnose and treat the infection and abscess which developed as a result of the failure to timely and appropriately repair the torn duodenum. And he alleges that Dr. Wilkins was employed by the Hospital pursuant to a contractual relationship so as to render the Hospital vicariously liable to plaintiff for damages caused by Dr. Wilkins' negligence under the doctrine of respondeat superior. In addition to his state law claims, plaintiff has alleged that both Dr. Wilkins and the King's Daughters Hospital violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd (EMTALA), by failing to stabilize his condition prior to transferring him to Mississippi Baptist Medical Center. It is upon this alleged violation of the EMTALA that plaintiff predicates federal question jurisdiction under 28 U.S.C. § 1331. Dr. Wilkins has moved to dismiss or for partial summary judgment, and to "transfer" this action to state court, contending that he is not a proper defendant under the EMTALA and urging, therefore, that there exists no jurisdictional basis for maintaining plaintiff's state law cause of action against him in this forum. The Hospital has also moved for summary judgment, arguing that plaintiff cannot establish that it violated the EMTALA.

■ In the court's opinion, Dr. Wilkins is not a proper defendant in a private civil action brought on account of an alleged improper transfer under the EMTALA. As discussed in more detail *infra,* the statute at issue states in pertinent part that "if an individual at a *hospital* has an emergency medical condition which has not been stabilized ... the *hospital* may not transfer the individual...." 42 U.S.C. § 1395dd(c)(1) (emphasis added). Further, the civil enforcement provision of the EMTALA permits "[a]ny individual who suffers personal harm as a direct result of a participating *hospital's* violation of a requirement of this section" to file "a civil action against the participating *hospital*" to recover those damages or other equitable relief. 42 U.S.C. § 1395dd(d)(2)(A) (emphasis added). Numerous courts have recognized, as does this court, that the EMTALA provides no private cause of action for recovery of damages against a physician but is instead limited to actions against participating hospitals. *See, e.g., Delaney v. Cade,* 986 F.2d 387, 393 (10th Cir.1993); *Baber v. Hospital Corp. of America,* 977 F.2d 872, 877 (4th Cir.1992); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1040 n. 1 (D.C.Cir.1991); *Helton v. Phelps County Regional Med. Ctr.,* 817 F.Supp. 789 (E.D.Mo. 1993); *Holcomb v. Monahan,* 807 F.Supp. 1526, 1531 (M.D.Ala.1992); *Richardson v. Southwest Mississippi Regional Med. Ctr.,* 794 F.Supp. 198 (S.D.Miss.1992).[2] Since it is manifest, in light of the clear terms of the statute, that Dr. Wilkins may not properly be sued for the EMTALA violation alleged by plaintiff,[3] it follows that plaintiff has not stat-

---

**2.** Citing *Burditt v. United States Department of Health & Human Services,* 934 F.2d 1362 (5th Cir.1991), plaintiff argues that the Fifth Circuit has found § 1395dd applicable to physicians as well as hospitals. Plaintiff's reliance on *Burditt* is misplaced. There, the court held only that a hospital may be vicariously liable for a physician's violations of EMTALA. The court did not hold that a physician may be held liable in a civil suit for violating the EMTALA.

**3.** The plaintiff alleged in his complaint that Dr. Wilkins, in violation of EMTALA, 42 U.S.C. § 1395dd(d)(1)(B)(ii), misrepresented the plaintiff's condition to Dr. Cynthia Haden–Wright, and further misrepresented to her that a surgeon in Jackson had agreed to accept the plaintiff on

transfer. This allegation, if true, might warrant the imposition of a civil money penalty against him under 42 U.S.C. § 1395dd(d)(1)(B)(ii). However, it would not render him subject to civil suit. In any event, though, there is no evidence to support this allegation. In fact, the evidence is uncontroverted that Dr. Wilkins never spoke with, or in any way communicated with Dr. Haden–Wright about the plaintiff, his condition or the transfer. Rather, Dr. Hutcheson spoke with Dr. Haden–Wright regarding the plaintiff and requested that Dr. Haden–Wright accept him for treatment. Indeed, it is apparently that fact which led the plaintiff to request to amend his complaint to add Dr. Hutcheson as a defendant. The court has concluded that the magistrate judge properly denied that request.

ed a federal claim against Dr. Wilkins. Dr. Wilkins asks, therefore, that the court dismiss, or "transfer" plaintiff's state law cause of action against him to the Circuit Court of Lincoln County, Mississippi, where it should have been brought. However, because plaintiff has alleged a federal claim against Dr. Wilkins' co-defendant, the Hospital, the court, prior to considering the merit of Dr. Wilkins' request, will first consider the Hospital's motion for summary judgment.[4]

Hospitals which execute Medicare provider agreements with the federal government pursuant to 42 U.S.C. § 1395cc are required to treat all persons who enter their emergency departments in accordance with the EMTALA. *See* 42 U.S.C. § 1395cc; *Burditt v. United States Dept. of Health & Human Servs.*, 934 F.2d 1362, 1366 (5th Cir.1991). The EMTALA imposes upon such hospitals certain responsibilities toward persons seeking emergency care from the hospital. First, the hospital must screen such a person to determine whether he has an "emergency medical condition" within EMTALA's definition of that phrase. If he is determined to suffer from an emergency medical condition, then the hospital must provide either

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(b)(1). However, the hospital may not transfer any individual suffering from an emergency medical condition if he has not first been "stabilized" within the meaning of the EMTALA, unless certain conditions are satisfied.[5] 42 U.S.C. § 1395dd(c); *Green v. Touro Infirmary*, 992 F.2d 537 (5th Cir.1993).

The plaintiff alleges that his transfer violated the EMTALA because his emergency medical condition was not "stabilized" when he was transferred from the Hospital to MBMC, and because the Hospital did not comply with the requisites for the transfer of a patient whose condition has not been stabilized. The Hospital does not dispute that the plaintiff was suffering from an "emergency medical condition" at the time he was transferred.[6] It contends, however, the plaintiff's

---

4. Dr. Wilkins' motion assumes that this court lacks subject matter jurisdiction over the state law claim against him since plaintiff has not stated a cognizable federal claim against him. However, in accordance with 28 U.S.C. § 1367(a), this court may exercise supplemental jurisdiction over claims that "involve the joinder or intervention of additional parties." In other words, the existence of a viable federal claim against the Hospital could support the exercise of jurisdiction over a claim against Dr. Wilkins that lacks an independent federal jurisdictional basis.

5. EMTALA explicitly defines circumstances in which a hospital may effect a transfer of an individual with an emergency medical condition who has not been "stabilized." Such a transfer must be "an appropriate transfer," and (1) the individual, or one who is legally responsible to act for him, requests a transfer in writing after being informed of the hospital's obligations under EMTALA; or (2) a physician, or other "qualified medical person" if a physician is unavailable, certifies in writing that "the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual ... from effecting the transfer." 42 U.S.C. § 1395dd(c)(1). An "appropriate transfer" is defined as one in which the transferring hospital "provides the medical treatment within

its capacity which minimizes the risks to the individual's health," and in which the receiving hospital "has available space and qualified personnel" to treat the patient and has agreed to accept transfer of the individual and to provide appropriate medical treatment. An "appropriate transfer" also requires that the transferring hospital send to the receiving hospital all medical records related to the emergency medical condition, and that the transfer be effected through qualified personnel and transportation equipment. 42 U.S.C. § 1395dd(c)(2).

The plaintiff argues that many of these requisites were omitted in connection with his transfer to MBMC. However, since these conditions apply only to transfers of patients who are not "stabilized," then plaintiff's contentions are of no consequence if the court concludes that he was "stabilized" at the time of the transfer.

6. The EMTALA defines "emergency medical condition" as follows:

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

(i) placing the health of the individual ... in serious jeopardy,

condition was "stabilized" when he was transferred so that the transfer was not in violation of the EMTALA.

■ The EMTALA provides that an emergency medical condition is "stabilized" if "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(B). The Hospital has provided evidence in the form of medical records, deposition testimony and affidavits to establish that the plaintiff's condition was "stabilized" according to this definition at the time of his transfer. There is presented, for example, an affidavit of Dr. Hutcheson, wherein he states both that "at the time of Mr. Deron's transfer he had been stabilized such that it was not reasonably probable that there would occur a material deterioration in Mr. Deron's condition during or as a result of the transfer," and that the ambulance run report and records of MBMC's emergency room "do not demonstrate any material deterioration in Mr. Deron's condition during the transfer of Mr. Deron to the Mississippi Baptist Medical Center." Similarly, Dr. Haden–Wright has provided an affidavit in which she states, based on her review of King's Daughters Hospital records and the ambulance record, as well as the records of MBMC's emergency room, "at the time of Mr. Deron's transfer, he had in fact been stabilized such that it was not reasonably probable that there would occur a material deterioration in Mr. Deron's condition during transfer." Dr. Haden–Wright has further opined that "these records do not demonstrate any material deterioration in Mr. Deron's condition during the transfer to Mississippi Baptist Medical Center." Plaintiff, though, claims that he was not "stabilized," relying exclusively upon deposition testimony by Dr. Hutcheson that at the time of the transfer, plaintiff's condition was potentially life threatening in that there existed a risk that his bleeding could worsen during the transfer, causing him to bleed to

(ii) serious impairment to bodily functions, or
(iii) serious dysfunction of any bodily organ or part....

death. Dr. Hutcheson testified in this regard as follows:

Q. All right. What were the risks associated with transferring Mr. Deron from King's Daughters Hospital to the Mississippi Baptist Medical Center?

. . .

A. The risk of transferring any emergency patients: He could have died during the transfer.

Q. All right. What other risks are there to emergency patients during transfer, besides death?

A. I mean, in this particular patient, the things you would be most concerned about would be worsening bleeding and exsanguination.

Q. Now, what is exsanguination?

A. Bleeding to death.

Q. Now, in your opinion, Mr. Deron was subject to this risk with his transfer.

A. That was certainly a consideration, and we felt like we had stabilized him to the point that the risk was outweighed by the potential benefit of a curative procedure.

Q. If I understood your last answer correctly, you felt like you had done all that you could to lower that risk, but it still existed.

A. Certainly.

. . .

Q. Was Mr. Deron's condition potentially life threatening at the time he left King's Daughters Hospital?

A. Yes.

Q. What conditions did Mr. Deron have at time [sic] of transfer which were potentially life threatening?

A. He had active bleeding, he had active infection.

Though plaintiff argues that Dr. Hutcheson's testimony conclusively establishes that his condition was not stabilized when he was transferred, the court must conclude otherwise.[7] Proof that there were risks involved

7. The plaintiff also relies on testimony by Dr. Hutcheson that the transfer of plaintiff was required to be certified under EMTALA, *see supra* note 5, as evidence that the transfer violated EMTALA. However, it is clear, considering Dr.

in the transfer, or that a "material deterioration of the condition" was *possible* as a result of or during the transfer will not suffice to demonstrate that the condition was not stabilized for purposes of transfer under EMTALA. Rather, in accordance with EMTALA's plain definition of the term, an individual's emergency medical condition is not "stabilized" only if "a material deterioration of the condition is *likely, within reasonable medical probability,* to result from or occur during the transfer." 42 U.S.C. § 1395dd(e)(3)(B) (emphasis added).

In a similar case, *Brooker v. Desert Hospital Corp.,* 947 F.2d 412 (9th Cir.1991), a plaintiff who was "clinically stable," but in overall critical condition and in need of surgical intervention, was transferred to another hospital where she could undergo bypass surgery. In concluding that the transfer did not violate the EMTALA, the Ninth Circuit observed as follows:

> "Brooker was in critical condition the entire time she was at Desert Hospital. A patient may be in critical condition, however, and still be 'stabilized' under the terms of the Act.
>
> The Act did not require Desert Hospital to alleviate completely Brooker's emergency condition. The Act did not require the hospital to perform angioplasty or bypass surgery within a specified time period. Rather, the Act required the hospital to provide Brooker with appropriate medical screening and stabilizing treatment and to refrain from transferring her unless she was 'stabilized.' "

*Id.* at 415. Because there was "nothing in the record to indicate that it was likely that the transfer would have any effect upon the plaintiff's condition," the court affirmed the district court's grant of summary judgment. Likewise, because plaintiff here has provided no proof, from a medical expert or otherwise, that any deterioration in his condition was *likely* to occur either during or as a result of the transfer, plaintiff's cause of action against the Hospital for a violation of the EMTALA cannot succeed. *See Green v. Touro Infirmary,* 992 F.2d 537, 539 (5th Cir.1993) (hospital's responsibility under the statute ends when it has stabilized the individual's condition).

Because the court has concluded that there exists no viable federal claim against either of the defendants, in the exercise of its discretion, the court concludes that the remaining state law claim should be dismissed without prejudice.[8] *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction).[9]

## CONCLUSION

Based on the foregoing, it is ordered that plaintiff's objection to the report and recommendation of the magistrate judge is overruled. It is further ordered that the motion by defendant King's Daughters Hospital for summary judgment, and the separate motion by defendant Dr. Louie Wilkins to dismiss or for partial summary judgment are granted.

Hutcheson's testimony in context, that he believed that *all* transfers of patients from the emergency department required EMTALA certification. Dr. Hutcheson's erroneous interpretation or belief as to the law cannot provide a basis for imposing liability against the Hospital.

8. The plaintiff alleged that the Hospital was vicariously liable under state law for the negligence of Dr. Wilkins since Dr. Wilkins "was acting in the course and scope of his employment or pursuant to a contractual relationship with Defendant King's Daughters Hospital." However, in interrogatory responses, Dr. Wilkins indicated that he was not an employee of the Hospital but rather was a staff physician with surgical privileges. The Mississippi Supreme Court has held that a hospital may be vicariously liable for damages caused by a physician who is employed

by or is under a contractual relationship with the hospital, but is not vicariously liable for the acts of physicians who merely have staff privileges. *See Mississippi Ethics Comm. v. Aseme,* 583 So.2d 955, 959–60 (Miss.1991). In view of defendants' uncontroverted evidence that Dr. Wilkins merely had staff privileges, there would appear to be no legal basis for imposing liability against the Hospital for his acts and/or omissions.

9. The court notes that in accordance with 28 U.S.C. § 1367(d), plaintiff, who appears to have filed this suit just two days prior to expiration of the applicable limitations period, has at least thirty days from the date of dismissal within which to file suit against Dr. Wilkins in state court.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.