## Potami v. Frankel

*Robin J. Marzella* and *Thomas W. Hall,* for plaintiffs.
*S. Walter Foulkrod III,* for defendant Frankel M.D.
*Evan Black,* for defendants Harrisburg Hospital and Pinnacle Health Hospitals.
*Steven D. Snyder,* for defendant Keystone Health Plan Central Inc.

HOOVER, *J.,* June 19, 2000—Plaintiffs Katherine R. Potami and Samuel J. Potami, her husband, brought suit against Sharon Frankel M.D., Harrisburg Hospital, Pinnacle Health Hospitals and Keystone Health Plan Central and asserted, inter alia, that Harrisburg Hospital and Pinnacle Health Hospitals (hereinafter the hospital) violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §1395(dd)(a), based upon the hospital's alleged failure to perform appropriate medical screening at the time of Mrs. Potami's arrival at the emergency room. The plaintiffs moved for summary judgment and argued that Harrisburg Hospital's intake procedure, which included a "pre-authorization" call to Mrs. Potami's primary care physician, constituted a per se violation of EMTALA, entitling plaintiff to judgment as a matter of law as to that aspect of her claim.

For the reasons set forth below, plaintiffs' motion for partial summary judgment is denied.

## FACTUAL BACKGROUND

Plaintiff Katherine Potami alleges that on October 25, 1994 she presented to Harrisburg Hospital's emergency room with complaints of severe mediastinal chest pain radiating into her back. Plaintiff asserts that immediately upon her arrival, the hospital staff inquired into Mrs. Potami's health insurance coverage, which she maintained with defendant Keystone Health Plan Central. The thrust of plaintiff's EMTALA claim against the hospital is that the emergency room staff improperly denied her a medical screening examination by an emergency room physician because she was an HMO subscriber, by placing a call for pre-authorization for the visit to her primary care physician. The record reflects that the hospital emergency room staff placed a pre-authorization call to plaintiff's primary care physician Sharon Frankel M.D., and that Dr. Frankel did not authorize the visit. Mrs. Potami left the emergency room without receiving an examination or treatment by an emergency room physician.

The record as to what transpired upon plaintiff's arrival at the emergency room includes the deposition testimony of the hospital's registration clerk, Mr. Paul Corbett, and the triage nurse, Ms. Dawn Sladky. Mr. Corbett testified that upon Mrs. Potami's arrival, he notified Nurse Sladky that there was a female in the waiting area with chest pain. The record reflects that Ms. Sladky performed a triage assessment of Mrs. Potami, which included taking her vital signs. The nurse entered the triage assessment into the emergency room record.

She then returned Mrs. Potami to the registration desk, where the clerk obtained Mrs. Potami's HMO insurance card.

Mr. Corbett then called Dr. Frankel, the plaintiff's primary care physician, to obtain pre-authorization for the emergency room visit. Mr. Corbett read to Dr. Frankel the triage nurse's notes. Dr. Frankel then spoke with the triage nurse and the patient by phone and diagnosed Mrs. Potami's condition as anxiety. Dr. Frankel recommended that Mrs. Potami return home. Dr. Frankel denied authorization for the emergency room visit. Mr. Corbett testified that he advised Mrs. Potami that she could still be seen in the emergency department, but would be responsible for payment. He testified that he advised Mrs. Potami that she could call the HMO at the number on the back of the insurance card to request an appeal of the doctor's denial.

The record also reflects that plaintiff's husband, Mr. Potami, discussed with the emergency room personnel a willingness to personally pay for the visit by check or credit card, but that after speaking with Dr. Frankel, his wife had decided to leave. Nurse Sladky testified that she felt that an emergency room physician should see Mrs. Potami, encouraged Mrs. Potami to stay for further evaluation and indicated that she would find an emergency room doctor to come speak with her. Nurse Sladky testified that she felt that Mrs. Potami should be seen emergently, and that she considered myocardial infarction or unstable angina in the range of possible diagnoses. However, Mrs. Potami testified that based upon her phone conversation with Dr. Frankel, she felt sufficiently reassured, so that she did not insist upon being seen by a doc-

tor in the emergency room. Mrs. Potami left the emergency room. The following morning, October 26, 1994, she returned to the emergency room for evaluation and treatment of an acute myocardial infarction.

According to the testimony of James Taylor M.D., Harrisburg Hospital's policy in effect in 1994, "Guidelines for emergency care under managed health care plans," set forth the intake procedure applicable to HMO patients. The guidelines required the outpatient clerk to contact the patient's insurance company or primary care physician before evaluation by the emergency room physician, unless, because of the nature of the emergency, registration would not be appropriate. Under the guidelines, where pre-authorization is denied, the patient may still see an emergency room physician, although the staff is required to disclose to the patient their financial responsibility for the visit.

Defendants Harrisburg Hospital and Pinnacle Health deny that the pre-authorization call denied plaintiff a medical screening exam in violation of EMTALA, and assert that plaintiff withdrew her request for examination by an emergency room physician.

## DISCUSSION

Plaintiffs have not demonstrated that the record is so free of genuine issues of material fact to entitle them to judgment as a matter of law on their claim that defendant Harrisburg Hospital violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. §1395(dd). Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Banks v. Jerome Taylor & Associates,* 700 A.2d 1329 (Pa. Super. 1997); Pa.R.C.P. 1035.2. On a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Kapres v. Heller,* 536 Pa. 551, 640 A.2d 888 (1994). We do not find that as a matter of law, the placement of the pre-authorization call, irrespective of its purpose or effect, amounted to disparate availability of the medical screening in violation of EMTALA. Further, issues of fact exist as to the reason the medical screening of the plaintiff, Mrs. Potami, did not take place. Accordingly, plaintiffs' motion for partial summary judgment must be denied.

The Act upon which plaintiffs base their claim, EMTALA, the "Patient Anti-Dumping Statute" requires that a hospital provide an "appropriate medical screening examination," within the capability of the hospital's emergency department to any individual who comes into the emergency department and requests examination and treatment. 42 U.S.C.§1395(dd)(a). The legislative history of the Act indicates that Congress intended to prevent hospitals from refusing to treat, or from "dumping" patients who lack insurance coverage. *Brooker v. Desert Hospital,* 947 F.2d 412 (9th Cir. 1991). However, "the Act itself draws no distinction between persons with and without insurance." *Id.* at 414. Accordingly, hospitals must provide uniform screening procedures to all individuals who come into the emergency room and request examination or treatment, regardless of financial status. In addition to the requirement to provide appropriate

medical screening, the Act further provides that if any individual has an "emergency medical condition," the hospital must either provide further medical treatment to stabilize the medical condition or transfer the patient to another medical facility, if indicated, if the transfer can be accomplished with relative safety. *Id.* at section (dd)(1)(c). The Act also prohibits a hospital from delaying an appropriate medical screening examination to inquire about the individual's method of payment or insurance status. *Id.* at section (dd)(h). Plaintiffs have briefed and argued the allegation of failure to provide the medical screening exam, and therefore, we will restrict our analysis to the issue of whether the pre-authorization call, as a matter of law, deprived Mrs. Potami of the right to an appropriate medical screening exam. We cannot conclude, based upon the law, and the disputed facts of record, that she was so denied.

The language of the Act itself, and case law interpreting its requirements, make its purpose clear: a hospital may not consider a patient's insurance status in deciding whether to perform a medical screening exam. "A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening exam reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present with substantially similar complaints." *Correa v. Hospital San Francisco,* 69 F.3d 1184 (1st Cir. 1995), citing *Barber v. Hospital Corp. of America,* 977 F.2d 872, 879 (4th Cir. 1992). "The essence of this requirement is that there be some screening procedure, and that it be administered evenhandedly." *Correa,* 69 F.3d at 1192.

However, neither the Act itself, nor case law interpreting the Act, completely prohibit inquiry into insurance information during the registration process, where the inquiry does not deprive the patient of, or delay, the appropriate medical screening examination. The Department of Health and Human Services Health Care Financing Administration's 1994 commentary regarding implementation of EMTALA's regulations provided:

"Hospitals may continue to follow reasonable registration processes for emergency room individuals, including requesting information about insurance as long as these procedures do not impede provision of necessary treatment and as long as all individuals to whom the procedures apply are treated similarly . . . the hospital shall not delay treatment to any individual while it verifies the information provided." 58 Fed.Reg. 32099.

Accordingly, we cannot state as a matter of law that placement of the pre-authorization call in the hospital's intake process de facto caused disparity in Mrs. Potami's access to an appropriate medical screening exam.

Further, the record contains issues of fact material to plaintiffs' claim that the hospital, by virtue of the pre-authorization call, denied Mrs. Potami the same medical screening examination as would have been available to a person with different insurance, or no insurance. An issue of fact exists as to whether, as asserted by plaintiff, the registration clerk inquired into insurance immediately upon Mrs. Potami's arrival in the emergency room, to screen her out as a "self-pay" patient, or whether the insurance information was requested as part of the usual registration process after triage. The record contains facts

upon which a jury could conclude that the hospital, in following its triage, intake, and registration procedure, and encouraging a medical examination by the emergency room physician, provided Mrs. Potami the same access to the medical screening examination as it would to a patient with any other payment status.

Finally, factual issues exist as to whether or not the pre-authorization call in some way caused Mrs. Potami to leave the emergency room. Plaintiff argues that the intake process ceased, and she was, in essence, coerced to leave the emergency room following denial of pre-authorization of the visit. However, the hospital presents evidence upon which a jury could conclude that Mrs. Potami made the decision to leave after consultation with Dr. Frankel over the phone, without regard to any payment issues. The hospital also presents evidence that, rather than depriving Mrs. Potami of a medical screening exam because of a payment issue, Nurse Sladky attempted to persuade Mrs. Potami to remain and be seen, but that Mrs. Potami withdrew her request for further evaluation and treatment. The existence of these material issues of fact relating to the hospital's responsibilities under EMTALA preclude summary judgment in favor of the plaintiffs.

Accordingly, plaintiffs' motion for partial summary judgment against defendants Harrisburg Hospital and Pinnacle Health Hospitals is hereby denied.

## ORDER

And now, June 19, 2000, plaintiffs' motion for partial summary judgment against defendants Harrisburg Hospital and Pinnacle Health Hospitals is hereby denied.