Craig Martin WOLFF, Plaintiff,

v.

Robert A. HOOD, Lt. Sales, Lt. Huff, Correctional Officer Edwards, Correctional Officer Van Dusen, and Correctional Officer C. Simmons, Defendants.

No. CIV.01–916–BR.

United States District Court,
D. Oregon.

Sept. 27, 2002.

Craig Martin Wolff, Federal Correction Complex, Federal Correctional Facility, Adelanto, CA, Plaintiff Pro Se.

Michael W. Mosman, United States Attorney, Ronald K. Silver, Assistant United States Attorney, Portland, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

Plaintiff, who is currently confined in the custody of the United States Bureau of Prisons ("BOP") at Victorville, California, brings this civil rights action *pro se.* Currently before the court is the Motion for Summary Judgment or, in the Alternative, Motion to Dismiss (# 20) of Defendants Robert A. Hood, Steven Sales, James Huff, and Michael Griffith.[1] The Court advised Plaintiff of federal summary judgment standards by Order (# 34) issued by the Clerk of the Court on January 23, 2002. For the reasons that follow, the Motion of these Defendants is **GRANTED.**

---

**1.** By Order (# 30) entered December 18, 2001, the Court stayed Plaintiff's claims against the remaining Defendants, Steven Crawford, Cliff Simmons, John Edwards, and Gary Van Dusen, pending resolution of a related habeas corpus proceeding Plaintiff brought pursuant to 28 U.S.C. § 2241 in

*Wolff v. Hood,* Civ. No. 00–156–BR. That action was dismissed upon Plaintiff's motion on September 10, 2002. Accordingly, the Court now lifts the stay. Plaintiff's claims against these Defendants shall proceed according to the schedule set forth below.

## PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff's complaint alleges four claims for relief, supported by a 30–paragraph narrative of events that occurred during Plaintiff's incarceration at FCI Sheridan. First, Plaintiff alleges Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference to a pervasive risk of harm Plaintiff faced.

Second, Plaintiff alleges Defendants violated his substantive and procedural due process rights under the Fifth and Fourteenth Amendments by their "egregious, arbitrary and capricious abuse of government authority and power which shocks the conscience and constitutes outrageous conduct, said conduct having been motivated by bias and/or other improper purpose or bad faith, which said acts and/or omissions did impose significant hardship and atypical hardship upon plaintiff.... Further, defendants invidiously discriminated against plaintiff and plaintiff's distinct class of 'sex offenders.' "

Third, Plaintiff alleges Defendants violated his First Amendment right to redress of grievances when they punished him for requesting protective custody.

Finally, Plaintiff alleges this Court should exercise supplemental jurisdiction "over the attached tort claim." Although no such claim is attached, the record indicates Plaintiff seeks to pursue a claim for an alleged loss of personal property.

By way of remedy, Plaintiff seeks a transfer to a federal correctional facility in Butner, North Carolina, the expungement of eleven disciplinary orders with a commensurate reduction in custody status, and compensatory and punitive damages.

## BACKGROUND

Plaintiff is a federal inmate serving a ten-year sentence imposed by Mexican authorities for Attempted Kidnaping of a FourYear–Old Minor. Following imposition of his sentence, Plaintiff was transferred to the United States for service of his term of imprisonment. Plaintiff's projected good-conduct release date is April 15, 2003.

Plaintiff arrived at the Federal Correctional Institution at Sheridan, Oregon ("FCI Sheridan") on April 1, 1999. Initially, prison authorities housed Plaintiff in the detention center, which is detached from the main institution.

On April 23, 1999, prison personnel transferred Plaintiff into the main institution. Eventually, Plaintiff lived in Unit 3, and remained there until April 30, 1999, when he requested Protected Custody Status. At that time, prison authorities transferred him to the Special Housing Unit ("SHU") pending investigation.

Plaintiff states he requested protective custody after overhearing a group of black inmates in Unit 3 talk of stabbing someone. Plaintiff reported this apparent threat to Case Manager Crawford, who allegedly said "You will *not* be given P/C, there will be a thirty day investigation after which we will find *nothing!* You will be given shots for from 18–24 months, put in the hole thirty days at a time, get taken."

Nevertheless, Crawford investigated Plaintiff's report. Crawford concluded protective custody was not appropriate because Plaintiff could not identify the inmates involved. After his complaint was designated as an unverified protection case, Plaintiff was required to return to general population on June 23, 1999.

While in general population, Plaintiff again sought protective custody on June 27, 1999. He claimed several inmates were yelling things related to his offense involving a child. When his Case Manager

requested information to verify the need for protective custody, however, Plaintiff refused to substantiate his claim. As a result, prison authorities transferred him back to the SHU.

Upon his arrival in the SHU on June 27, 1999, Plaintiff's personal property was delivered to Officer Hamling, the SHU Property Officer. According to Officer Hamling, he and Plaintiff inventoried the property together and completed and signed Form BP–383(58) that reflected the inventory. Plaintiff denies he personally inventoried the property. Plaintiff asserts he simply signed the form when Officer Hamling presented it to him in his cell. Plaintiff further contends Officer Hamling took or destroyed a legal book and other personal property.

After June 27, 1999, Plaintiff remained in SHU as an unverified protection case because he refused to return to general population. Eleven times between July 1999 and September 2000, prison staff attempted to return Plaintiff to general population. Each time, Plaintiff refused.

Each time Plaintiff refused to return to general population, staff members wrote an Incident Report for Refusing to Work, or to Accept a Program Assignment, a violation of Code 306. Disciplinary Hearing Officer ("DHO") Michael Griffith conducted a hearing on each Incident Report. DHO Griffith states he informed Plaintiff at each hearing of the need to identify the inmates whom Plaintiff feared. Plaintiff nevertheless refused.

With each Incident Report, Plaintiff was given written notice of the charges more than 24 hours before the hearing. Plaintiff also had the opportunity to call witnesses, present evidence, and provide testimony at each hearing. In addition, Plaintiff had the opportunity to seek assistance from a staff member in preparation for each hearing. Indeed, Plaintiff was represented by a case manager at two of the hearings. In the remaining nine hearings, however, Plaintiff waived his right to staff representation. Following each of the eleven hearings, Plaintiff received a copy of DHO Griffith's report containing a summary of the evidence considered, the reasons for the sanctions imposed, and a notice of Plaintiff's appeal rights.

At each hearing, DHO Griffith concluded Plaintiff violated Code 306. DHO Griffith based his decision upon the Incident Reports that indicated Plaintiff was ordered to leave SHU and to return to general population and Plaintiff refused to abide by this order based upon a vague, unsubstantiated idea that his safety was in jeopardy. In addition, DHO Griffith considered written statements provided by Plaintiff's Unit Manager indicating the May 1999 investigation revealed no evidence Plaintiff was in need of protective custody. Finally, DHO Griffith considered Plaintiff's admitted refusals to abide by staff orders to leave SHU and to return to general population.

On July 29, 2001, after spending over two years in SHU at FCI Sheridan as an unverified protection case, prison authorities transferred Plaintiff to the Federal Correctional Institution in Victorville, California.[2]

### LEGAL STANDARDS

Fed.R.Civ.P. 56(c) authorizes summary judgment if no genuine issue exists re-

---

**2.** Throughout his response to the Motion for Summary Judgment, Plaintiff states his transfer was improper because he had a motion for stay of transfer pending in the related habeas action, *Wolff v. Hood,* Civ. No. 00–1056–BR. In fact, the Court notes Petitioner's request for stay of transfer was stayed pending exhaustion of Petitioner's administrative remedies. The stay remained in effect at the time Petitioner sought voluntary dismissal of his habeas petition.

garding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). In response to a properly-supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Guidroz–Brault v. Mo. Pac. R.R. Co.,* 254 F.3d 825, 829 (9th Cir.2001) (internal quotation and citation omitted). All reasonable inferences from the facts in the record must be drawn in favor of the nonmoving party. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust,* 258 F.3d 986, 999 (9th Cir.2001), *cert. denied,* 534 U.S. 1082, 122 S.Ct. 815, 151 L.Ed.2d 699 (2002). A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1389 (9th Cir.1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir.1998) (citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin,* 261 F.3d at 919.

## DISCUSSION

### I. Eighth Amendment

■ To prevail on a claim under the Eighth Amendment for the failure to protect, an inmate must show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In addition, the inmate must demonstrate the particular defendant acted with deliberate indifference. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970.

■ In order to prove deliberate indifference in this context, Plaintiff must prove each Defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970. If an official fails to alleviate a significant risk he should have perceived but did not, an inmate does not state a claim. *Id.* at 838, 114 S.Ct. 1970.

■ Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In the Ninth Circuit Court, this requires "a prior showing of physical injury that need not be significant but must be more than *de minimis.*" *Oliver v. Keller,* 289 F.3d 623, 627 (9th Cir. 2002). Plaintiff presents no evidence of physical injury resulting from Defendants' alleged failure to protect him from other inmates.[3] Thus, to the extent Plaintiff

---

3. Plaintiff was involved in a physical altercation with a cell-mate while housed in the SHU. When questioned by an investigator, Plaintiff stated the other inmate accused Plaintiff of watching him sleep, and when Plaintiff did not respond to the accusation, he was physically attacked. Plaintiff now claims the attack was precipitated solely by Plaintiff's perceived status as a "child molester." A party cannot, however, generate an issue of material fact by providing his own contradictory statements. *See Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991).

seeks compensatory and punitive damages premised upon a violation of his Eighth Amendment right to be free from cruel and unusual punishment, § 1997e(e) bars his claim. *See Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir.1999) (affirming dismissal of inmate's failure to protect claim under § 1997e(e) without allegation of physical injury).

## II. *Fifth Amendment*

■ Although Plaintiff's Complaint is not a model of clarity, he appears to allege three due process claims and one equal protection claim under the Fifth Amendment[4]: (1) a violation of his procedural due process rights in connection with the missing personal property; (2) a violation of his procedural due process rights in connection with the disciplinary proceedings conducted by DHO Griffith; (3) a violation of substantive due process as a result of the failure to heed Plaintiff's repeated requests for protective custody; and (4) discrimination against Plaintiff as a member of a class of sex offenders.

### A. Procedural Due Process

### 1. Personal Property

■ Whether Defendant Hamling acted negligently, or intentionally and without authority, Plaintiff cannot establish a claim for a violation of his due process rights. If Hamling's negligence caused the loss of Plaintiff's property, there would be no unconstitutional deprivation. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662 (1986) (negligence of federal agent resulting in property loss not constitutional deprivation). Even if Hamling intentionally withheld or lost Plaintiff's property, unauthorized intentional deprivation of proper-

ty does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Rodriguez–Mora v. Baker,* 792 F.2d 1524, 1527 (11th Cir.1986). If Hamling was acting without authorization, the Federal Tort Claims Act would provide a post-deprivation remedy, permitting an action for conversion. Accordingly, Plaintiff cannot prevail on a due process claim for the loss or destruction of his personal property.

### 2. Disciplinary Hearings

■ When a prisoner faces disciplinary charges, prison officials must provide the prisoner (1) a written statement at least 24 hours before the disciplinary hearing which includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance when the charges are complex or the inmate is illiterate. *Wolff v. McDonnell,* 418 U.S. 539, 563–70, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

■ In addition, due process requires there is at least "some evidence" to support a prison disciplinary decision. *Id.* at 455–56, 105 S.Ct. 2768; *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994); *Bostic v. Carlson,* 884 F.2d 1267, 1269–70 (9th Cir.1989). "There 'must be some indicia of reliability of the information that forms the

---

4. Plaintiff also alleges Defendants violated his rights under the Fourteenth Amendment. No such claim, however, exists. *See Erickson v. U.S.,* 976 F.2d 1299, 1301 n. 1 (9th Cir.1992) ("[w]e are aware of no authority approving a constitutional tort action against a federal official for a violation of the fourteenth amendment, which applies by its terms only to state action.")

basis for prison disciplinary actions.' " *Toussaint v. McCarthy,* 926 F.2d 800, 802–03 (9th Cir.1990), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213, 116 L.Ed.2d 171 (1991) (quoting *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987)).

Plaintiff does not present evidence of any genuine issue of material fact on his procedural due process claim. With each of the disciplinary proceedings, Plaintiff received the process due under the Fifth Amendment. Moreover, each decision by DHO Griffith was supported by some evidence in the record. Accordingly, the moving Defendants are entitled to summary judgment on Plaintiff's procedural due process challenge to the disciplinary proceedings.[5]

**B. Substantive Due Process**

■■■■ "To establish a violation of substantive due process ..., a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Patel v. Penman,* 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied,* 520 U.S. 1240, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997). However, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J., for plurality), quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443

(1989). In other words, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

Plaintiff's substantive due process claim fails because prison officials' failure to protect an inmate from violence at the hands of other inmates is a particular sort of government behavior against which the Eighth Amendment prohibition against cruel and unusual punishment provides an explicit textual source of constitutional protection. Accordingly, Plaintiff cannot obtain relief on his substantive due process claim.

**C. Equal Protection**

■■■■ Pursuant to the Fifth Amendment, "[n]o person shall be ... deprived of life, liberty, or property, without due process of law ...." The government may not, therefore, deny an individual equal protection of the laws. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

■■■ If an equal protection claim does not implicate a suspect class or fundamental right, the relevant inquiry is whether the prison officials' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Young v. United States Parole Comm'n,*

---

**5.** To the extent a contrary outcome necessarily would invalidate the disciplinary finding and would affect the duration of Plaintiff's confinement, the Court notes a claim arising from such a finding would not accrue until the finding is invalidated. *See Edwards v. Balisok,* 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

682 F.2d 1105, 1109 (5th Cir.), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 517 (1982).

■ "Sex offenders" are not a suspect class for the purposes of equal protection analysis. *U.S. v. LeMay,* 260 F.3d 1018, 1030 (9th Cir.2001), *cert. denied,* 534 U.S. 1166, 122 S.Ct. 1181, 152 L.Ed.2d 124 (2002). Nor does Plaintiff's claim implicate a fundamental right. Moreover, even if Plaintiff could present facts supporting this claim, Defendants have shown legitimate, non-discriminatory reasons for their actions. *See Fragante v. City and County of Honolulu,* 888 F.2d 591, 595 (9th Cir. 1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990). Accordingly, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

### III. *First Amendment*

■ Plaintiff alleges Defendants violated his First Amendment right to redress grievances when Defendants initiated and prosecuted disciplinary proceedings against him in retaliation for his attempts to attain protective custody status. Prisoners have a First Amendment right to be free from retaliation for participating in "protected speech activities." *Pratt v. Rowland,* 65 F.3d 802, 806 & n. 4 (9th Cir.1995).

■ To establish a claim for retaliation, the prisoner must prove he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. *Barnett v. Centoni,* 31 F.3d at 815–16. The prisoner also must establish his constitutional rights were actually chilled. *Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir.2000). Finally, the prisoner must submit evidence to establish a causal link between the exercise of constitutional rights and the allegedly retaliatory

action. *Pratt,* 65 F.3d at 807. These claims must be evaluated in light of the deference generally accorded to prison officials. *Id.*

Plaintiff fails to present evidence establishing the disciplinary proceedings did not advance legitimate penological goals, such as preserving institutional order and discipline. At each disciplinary hearing, Plaintiff admitted he failed to comply with prison officials' direct orders to return to general population. In light of the deference this Court must accord to the decisions of the moving Defendants, the Court concludes Plaintiff has not established a claim for retaliation. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

### IV. *Tort Claim*

Finally, it appears Plaintiff seeks to allege a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.,* for missing personal property. Plaintiff, however, is not entitled to relief.

■ First, the United States is the only proper defendant in an action brought under the FTCA. *Lance v. United States,* 70 F.3d 1093, 1095 (9th Cir.1995) (citing *Woods v. United States,* 720 F.2d 1451, 1452 n. 1 (9th Cir.1983)). Plaintiff does not name the United States as a defendant to this action.

■ Second, in order for Plaintiff's to succeed with a claim under the FTCA, he must prove the loss of his property was caused by a negligent or wrongful act or omission by a government employee. 28 U.S.C. § 2672. "Negligence is a prerequisite for recovery under the FTCA." *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). Officer Hamling states all of Plaintiff's personal property was collected and inventoried upon Plaintiff's transfer to the SHU, and that plain-

tiff signed the inventory sheet acknowledging this. Plaintiff submits no evidence to the contrary and, in fact, submits no evidence that he even possessed the law book and other materials at the time of his transfer. "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (citing *Angel v. Seattle–First Nat'l. Bank*, 653 F.2d 1293, 1299 (9th Cir.1981)). Accordingly, no genuine issue of material fact exists, and the Motion for Summary Judgment of the moving Defendants is granted.

### CONCLUSION

For these reasons, the Court GRANTS the Motion for Summary Judgment or, in the Alternative, Motion to Dismiss (# 20) of Defendants Robert A. Hood, Michael Griffith, James Huff, and Steven Sales. The Court DISMISSES WITH PREJUDICE Plaintiff's claims against these.

The Court also LIFTS THE STAY of Plaintiff's claims against Defendants Steven Crawford, Cliff Simmons, John Edwards, and Gary Van Dusen. The parties shall complete discovery and file dispositive pretrial motions with respect to the remaining claims no later than December 13, 2002.

IT IS SO ORDERED.